COMMONWEALTH of Pennsylvania, Appellant

v.

Malik BROWN, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 5, 2004.

Filed May 19, 2005.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com.

Gerald A. Stein, Philadelphia, for appellee.

Before: STEVENS, GANTMAN, and KELLY, JJ.

GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, asks us to determine whether the trial court erred in granting the Rule 600 motion to dismiss, filed on behalf of Appellee, Malik Brown. We hold the court erred in dismissing the case against Appellee, where the Commonwealth exercised due diligence and did not engage in any misconduct designed to evade Appellee's fundamental speedy trial rights. Accordingly, we reverse.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On April 14, 1999, John Wilson was shot to death at a playground in North Philadelphia. Two witnesses identified Appellee as the shooter after viewing photo arrays prepared by police. On August 25, 1999, the Commonwealth issued a criminal complaint charging Appellee with murder[1], robbery[2], firearms not to be carried without a license[3], possessing instruments of crime[4], and carrying firearms on public streets or public property in Philadelphia.[5]

The case was first listed on 09/01/99 and was [re-listed for 09/07/99 before being] continued to 09/16/99 because the Commonwealth needed a witness and because [Appellee's] attorney, Gerald Stein, Esquire, had just been retained. On 09/16/99, the Commonwealth again requested a continuance, since it had been unable to locate a witness. [Appellee] was ready. The case was continued to the earliest possible date ("EPD") of 09/29/99.

On 09/29/99, [Appellee] was held for court on all charges, and an arraignment date of 10/20/99 was scheduled.

On 10/20/99, an arraignment was held and the case was continued to 11/05/99 for a pre-trial conference before Judge Lazarus in Room 707. On the 11/05/99 listing, it is noted that discovery was just received and motions were to be filed by 12/03/99.

* * *

On 12/03/99 the case was given a new date of 12/10/99 for a further pre-trial conference. The case was "spun" to Judge Lazarus. On 12/10/99, the case was continued to 01/07/00 for a further pre-trial conference, as per [Appellee's] request.

* * *

On 01/07/00, the Quarter Sessions file reflects there was still discovery out-

1. 18 Pa.C.S.A. § 2502.
2. 18 Pa.C.S.A. § 3701.
3. 18 Pa.C.S.A. § 6106.
4. 18 Pa.C.S.A. § 907.
5. 18 Pa.C.S.A. § 6108.

standing. The case was spun to Judge Jackson and was given a date of 01/28/00 for a Scheduling Conference before him. [Assistant District Attorney] Williams was present for the Commonwealth, as was Mr. Stein for [Appellee.]

On 1/28/00, at a Scheduling Conference before Judge Jackson, the Quarter Sessions file notes that the case was a "capital jury case," and was continued to 03/01/00 for status of discovery.

On 03/01/00, discovery was finally passed to [Appellee], minus the names and addresses of the Commonwealth witnesses. The earliest possible date for a jury trial before Judge Jackson was 09/25/00, however, [Appellee's] counsel was unavailable on that date, due to another trial. A trial date of 11/06/00 was therefore given, and Mr. Stein was attached for that date.

* * *

On 08/07/00, Judge Glazer [who was assigned to the case following Judge Jackson's retirement] held a pre-trial conference regarding the case. He ordered the trial date of 11/06/00 to remain, and ordered both counsel attached.

On 11/06/00 the trial was continued until 04/24/01 [due to Appellee's advance request for continuance]. On 04/24/01, Judge Glazer had another homicide jury trial in progress, and the case was continued to 05/29/01.

On 05/29/01, the Quarter Sessions file simply notes, "Capital case. Listed for jury trial." A trial date of 07/02/01 was given. However, on 07/02/01, the case did not proceed to trial and, instead, was given a status listing of 09/07/01, and a new trial date of 02/20/02. Further status listings were held on 09/07/01 and 12/07/01, with the 02/20/02 trial date still noted at each of those listings.

However, the case still did not proceed to trial on 02/20/02. Instead, it was listed before that date—on 01/09/02—before the Honorable Peter Rogers, for a pre-trial conference. [Court administration reassigned this case to Judge Rogers after Judge Glazer had been transferred to the Civil Division.] According to the Quarter Sessions file, Mr. Stein was in federal court on 01/09/02, so the case was re-listed to 01/17/02 for the pre-trial conference. The Quarter Sessions file notes that discovery was complete. At the 01/17/02 pre-trial conference, a new trial date of 04/08/02 was given, and it was noted that this was the EPD. The Quarter Sessions file also notes, "Capital case—Discovery complete. No motion. 8 day jury."

On 04/08/02, the case was continued because Mr. Stein was on trial elsewhere. He had presented an advance defense request to the [trial court] for the continuance. The time was ruled excludable until the next trial date of 09/23/02, and Mr. Stein was attached.

* * *

Before the next trial listing, however, the case was [reassigned from Judge Rogers' inventory and] listed on 09/16/02, before Judge Mazzola. The Quarter Sessions file simply notes, "List for Capital Jury Trial. 2 weeks." A trial date of 04/21/03 was given. There is no indication in the Quarter Sessions file as to why the case was given such an extended trial listing, nor that 04/21/03 was the [earliest possible date].

On 04/21/03, [Appellee's] trial did not proceed because Judge Mazzola was on a jury trial with another matter. No other courtroom was available to hear the case that day. The case was given a new trial date of 05/29/03 for a capital jury trial.

[On 04/25/03, Appellee filed a motion to dismiss pursuant to Rule 600.]

On 05/29/03, Judge Mazzola was unavailable, due to illness. The case was given a status date of 06/26/03. Then, on 06/26/03, the case was continued to 06/30/03, to [Judge Sarmina] for a "600 Motion."

On 06/30/03, [the trial court] commenced the hearing on the [Rule] 600 Motion to Dismiss. This hearing was bifurcated,[6] and additional evidence was presented on [07/17/03,] 07/18/03 [07/22/03, and 07/23/03].

(Trial Court Opinion, filed February 10, 2004, at 1–7) (internal footnotes omitted).

¶ 3 Although the court had not yet ruled on Appellee's Rule 600 motion, his trial commenced on July 28, 2003. On August 1, 2003, the trial court declared a mistrial, because the jury could not reach a unanimous verdict. On September 10, 2003, the trial court granted Appellee's Rule 600 motion, finding: 1) the Commonwealth did not exercise due diligence in moving Appellee's case to trial; 2) the instant case substantially exceeded the time limits of Rule 600; and, 3) Appellee's right to a prompt and speedy trial was violated. The Commonwealth timely filed this appeal.

¶ 4 The Commonwealth raises the following issue:

> DID THE TRIAL COURT ERR IN DISMISSING THE CAPITAL CHARGES AGAINST [APPELLEE] PURSUANT TO PA.R.CRIM.P. 600 WHERE [APPELLEE] WAIVED HIS SPEEDY TRIAL CLAIM BY AGREEING TO THE POSTPONEMENT OF THE CASE BEYOND THE RUN DATE, AND WHERE THE COMMONWEALTH WAS DULY DILIGENT IN ATTEMPTING TO BRING [APPELLEE] TO TRIAL AND THE CIRCUMSTANCES THAT CAUSED THE DELAY WERE ENTIRELY BEYOND ITS CONTROL?

(Commonwealth's Brief at 9).

¶ 5 "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt,* 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc*). Further, we note:

> The proper scope of review...is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

> * * *

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

---

**6.** What the court means when it says "bifurcated" is that it scheduled the Rule 600 hearing on several different days to allow counsel time to find and review pertinent law to support the defense's position on due diligence. (N.T. Rule 600 Hearing, 6/30/03, at 97–100).

*Id.* at 1238–39 (internal citations and quotation marks omitted).

 ¶ 6 Initially, the Commonwealth asserts a defendant "waives any later claim of a Rule 600 violation" by agreeing to a continuance beyond the adjusted run date.[7] (Appellant's Brief at 20) (emphasis added). The Commonwealth insists Appellee agreed to such a continuance at the April 24, 2001 listing, when Appellee's counsel stated, "Tuesday after Memorial Day, Malik Brown, Tuesday, the 29th of May," [8] during an exchange with the trial court. The Commonwealth contends this statement constituted specific approval of or a request for a trial date after the adjusted run date. The Commonwealth concludes Appellee waived his Rule 600 rights, and the trial court's order granting Appellee's Rule 600 motion must be reversed. We disagree with this contention.

¶ 7 Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600. Prompt Trial**

* * *

(A)(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

* * *

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

* * *

Pa.R.Crim.P. 600. "Pursuant to Article I, section 14 of the Pennsylvania Constitution, a defendant charged with a capital crime is not eligible to be released from pretrial incarceration on bail." *Commonwealth v. Hill,* 558 Pa. 238, 248, 736 A.2d 578, 583 (1999). Thus, the Commonwealth has 365 days to bring an incarcerated first-degree murder defendant to trial. *Commonwealth v. Rega,* 856 A.2d 1242, 1247 (Pa.Super.2004). However, to obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges. *Hunt, supra* at 1243.

 ¶ 8 In assessing a Rule 600 claim, the court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances the defendant requested and any periods for which he expressly waived his rights under Rule 600. Pa.R.Crim.P. 600(C).

A defendant has no duty to object when his trial is scheduled beyond the Rule [600] time period so long as he does not indicate that he approves of or accepts the delay. *Commonwealth v. Taylor,*

---

7. For ease of disposition, we have divided our analysis into two parts. We first address the Commonwealth's argument regarding Appellee's waiver of his right to a speedy trial. This discussion is followed by our examination of the Commonwealth's due diligence claim.

8. Tuesday, May 29, 2001.

409 Pa.Super. 589, 598 A.2d 1000, 1003 (1991), *appeal denied,* 531 Pa. 654, 613 A.2d 559 (1992) (addressing Municipal Court's counterpart to speedy trial rule). If the defense indicates approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request. *Commonwealth v. Guldin,* 502 Pa. 66, 71, 463 A.2d 1011, 1014 (1983). *Hunt, supra* at 1241.

■ ¶ 9 "Judicial delay can support the grant of an extension of the Rule [600] run date." *Commonwealth v. Williams,* 726 A.2d 389, 392 (Pa.Super.1999), *appeal denied,* 560 Pa. 745, 747 A.2d 368 (1999) (quoting *Commonwealth v. Spence,* 534 Pa. 233, 243, 627 A.2d 1176, 1181 (1993)).

> Where the delay is due to [congested] court dockets, the **trial court is to establish that:** it has devoted a reasonable amount of its resources to the criminal docket and that **it scheduled the criminal trial at the earliest possible date** consistent with the court's business.

*Id.* (emphasis added).

¶ 10 In the context of Rule 600, the distinction between "excludable time" and "excusable delay" is as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, . . . any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circum-

stances beyond the Commonwealth's control and despite its due diligence. *Hunt, supra* at 1241 (internal citations omitted).

■ ¶ 11 "Rule [600] is a rule of criminal procedure designed to implement and protect a defendant's constitutional right to a speedy trial." *Commonwealth v. Myrick,* 468 Pa. 155, 160, 360 A.2d 598, 600 (1976). However, "Rule [600], like the right to a speedy trial which it protects, may be waived." *Commonwealth v. Brown,* 497 Pa. 7, 11, 438 A.2d 592, 594 (1981) (quoting *Myrick, supra* at 159, 360 A.2d at 600).

> There are no formal requirements for a valid waiver of Rule [600]; so long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded *prima facie* validity.

*Brown, supra* at 11, 438 A.2d at 594 (internal quotation marks omitted). *See also Myrick, supra* (holding either colloquy between court and defendant or signed agreement by defendant was sufficient record evidence of defendant's waiver of speedy trial rights). "The basic requirements for making a valid waiver of constitutional rights . . . are instructive in our consideration of the validity of a claimed waiver of the protections of rule [600]." *Id.* at 161, 360 A.2d at 600. Further, "[t]he Commonwealth has the burden of establishing any waiver." *Id.* at 160, 360 A.2d at 600.

■ ¶ 12 Instantly, the Commonwealth filed its complaint on August 25, 1999. Therefore, the Rule 600 mechanical run date was August 24, 2000, because 2000 was a leap year. However, Appellee requested several continuances which significantly altered the mechanical run date. The 9–day period from September 7, 1999 through September 16, 1999 is excludable because Appellee's counsel was unavailable

prior to September 16th. *See Hunt, supra;* Pa.R.Crim.P. 600(C). The 28–day period from November 5, 1999 through December 3, 1999 is also excludable, because Appellee's counsel requested a continuance to review discovery materials. *See id.* Additionally, the 28–day period from December 10, 1999 through January 7, 2000 is excludable due to another continuance requested by Appellee's counsel. *See id.* These delays extended the adjusted run date to October 28, 2000.

¶ 13 At a March 1, 2000 scheduling conference, the court determined the earliest possible date for Appellee's jury trial was September 25, 2000. The 208–day period between March 1, 2000 and September 25, 2000 was excusable delay, because the court determined that September 25th was the EPD. *See Williams, supra.* Appellee's counsel requested a continuance from the September 25th trial date, due to counsel's attachment to another trial. The court rescheduled Appellee's trial for November 6, 2000. Thus, the 42–day period between September 25, 2000 and November 6, 2000 was ruled excludable. *See Hunt, supra.* At that point, the adjusted run date was extended to July 5, 2001. Appellee's counsel also requested another continuance prior to the November 6th trial date. This compelled the court to reschedule the trial for April 24, 2001. This 169–day delay changed the adjusted run date from July 5, 2001 to December 21, 2001. *See id.*

¶ 14 The following chart summarizes the delays thus far:

| DATES | ACTIVITY | DAYS DELAY | EXCLUDABLE OR EXCUSABLE | ADJUSTED RUN DATE |
|---|---|---|---|---|
| 8/25/99-9/07/99 | Case listed for 9/01/99; Commonwealth not ready to proceed; case re-listed for 9/07/99 | 13 | No | 8/24/00 |
| 9/07/99-9/16/99 | Appellee's counsel unavailable; case relisted for 9/16/99 | 9 | Excludable; Appellee's request | 9/02/00 |
| 9/16/99-9/29/99 | Commonwealth requested continuance because of inability to locate witness | 13 | No | 9/02/00 |
| 9/29/99-10/20/99 | Appellee held for court on all charges; arraignment scheduled | 21 | No | 9/02/00 |
| 10/20/99-11/05/99 | Arraignment held; pre-trial conference scheduled for 11/05/99 | 16 | No | 9/02/00 |
| 11/05/99-12/03/99 | Discovery received; Appellee requested continuance to review discovery materials | 28 | Excludable; Appellee's request | 9/30/00 |
| 12/03/99-12/10/99 | Pre-trial conference scheduled for 12/10/99 | 7 | No | 9/30/00 |
| 12/10/99-1/07/00 | Additional discovery materials received; Appellee requested continuance | 28 | Excludable; Appellee's request | 10/28/00 |
| 1/07/00-1/28/00 | Some discovery materials outstanding; conference scheduled | 21 | No | 10/28/00 |
| 1/28/00-3/01/00 | Case continued for status of discovery | 33 | No | 10/28/00 |
| 3/01/00-11/06/00 | Court determined EPD was 9/25/00, however, Appellee's counsel attached for another trial on that | 250 | 42 days excludable; delay; Appellee's counsel's request; | 7/05/01 |

| | | | | |
|---|---|---|---|---|
| | date; trial scheduled for 11/06/00 | | 208 days excusable based on EPD | |
| 11/06/00-4/24/01 | Appellee's counsel requested continuance prior to 11/06/00; trial rescheduled for 4/24/01 | 169 | Excludable; Appellee's request | 12/21/01 |

¶ 15 On April 24, 2001, the court could not proceed with Appellee's trial, because it was presiding over an unrelated homicide trial. The court conducted a pre-trial conference in Appellee's case on April 24th. The court, defense counsel, and the Commonwealth's attorney who was involved in the unrelated homicide case used this conference to determine a possible date for Appellee's trial:

THE COURT: Are you available Monday?

MR. STEIN: Next Monday?

MR. BRENNAN [9]: I'm going to ask the Court for a favor today and it might affect your scheduling. I'm going to ask the Court if the Court will consider recessing on Friday. I didn't realize yesterday that like your commitment on May 1, I made a commitment on Friday.

THE COURT: What is the commitment?

MR. BRENNAN: I made a commitment to take my kids on a trip on Friday. Other than three days, three calendar days, I have not been off trial since the Tuesday after Labor Day. I was going to ask you to consider recessing on Friday—I jumped in.

MR. STEIN: Can I say the following: On Tuesday, I have a—

THE COURT: Would we be done by the 12th or the 11th?

MR. GILSON [10]: You want us to be through by the 12th, that's the following—

MR. STEIN: Tuesday after Memorial Day, Malik Brown, Tuesday the 29th of May.

(N.T. Conference, 4/24/01, at 2–3). At the conclusion of this exchange, Appellee's counsel's stated a date and his client's name, before repeating the date. This is the final line in the hearing transcript. There is no additional evidence that counsel intended to suggest a trial date; the transcript does not reveal whether counsel approved or disapproved of this date. Without more, we cannot agree with the Commonwealth that this statement alone amounted to an express request for a May 29th trial date. The mere mention of a date and a client's name did not, absent more, signify "an indication, on the record" of an "informed and voluntary decision of the defendant" to waive his Rule 600 rights. *See Brown, supra; Myrick, supra; Hunt, supra.* Moreover, our calculations demonstrate that May 29, 2001 was well within the extended adjusted run date of December 21, 2001. Thus, we conclude counsel's statement does not represent a waiver of Appellee's constitutional right to a speedy trial. *See Hunt, supra.*

¶ 16 Next, the Commonwealth asserts that Appellee's Rule 600 motion should have been dismissed, because the Commonwealth exercised due diligence in bringing Appellee to trial. The Commonwealth contends that, with the exception of the first two listings in September 1999, it was present and fully prepared to proceed to trial at each new listing. Moreover, the Commonwealth emphasizes that the delays which postponed Appellee's trial were due

9. Mr. Brennan was defense counsel in the ongoing and unrelated homicide case.

10. Mr. Gilson was the prosecutor in the ongoing and unrelated homicide case.

to excludable and excusable time, including the unavailability of Appellee's counsel, transfers of the case ordered by court administration, and the crowded criminal docket in Philadelphia. The Commonwealth concludes its trial readiness constituted due diligence, and the trial court's order granting Appellee's Rule 600 motion should be reversed. We agree.

¶ 17 If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay. *Id.*; Pa.R.Crim.P. 600(C), (G). Even where a violation of Rule 600 has occurred, we recognize:

> [T]he motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and...the circumstances occasioning the postponement were beyond the control of the Commonwealth.
>
> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth.
>
> Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that [defendant] was brought to trial within the time prescribed by Rule [600]. [*Commonwealth v. Aaron*, 804 A.2d 39, 43–44 (Pa.Super.2002)]. *See also Hill, supra* at 264, 736 A.2d at 592 (finding Commonwealth exercised due diligence when it initially scheduled trial well within time requirements of Rule [600] but trial was delayed by actions of defendant beyond Commonwealth's control). Further, this Court has held the Commonwealth exercised reasonable effort when within the run date the Commonwealth was ready to commence trial and was prevented from doing so by an administrative error which resulted in a trial date three days beyond the run date. [*Com. v.*] *Wroten*, [305 Pa.Super. 340, 451 A.2d 678], *supra* at 680–81 (holding inadvertent administrative error is not enough to defeat due diligence). *See also* [*Commonwealth v. Corbin*, 390 Pa.Super. 243, 568 A.2d 635 (1990)] (holding inadvertent listing beyond run date due to overburdened docket, meager staff, and administrative breakdown at detention center, excused Commonwealth with respect to unavailability of its witness).

*Hunt, supra* at 1241–42 (internal quotation marks and some citations omitted) (emphasis in original). *See also Commonwealth v. Jackson*, 765 A.2d 389 (Pa.Super.2000), *appeal denied*, 568 Pa. 628, 793 A.2d 905 (2002) (holding Commonwealth exercised due diligence when it was prepared to go to trial at all times and did not request delays or continuances for any reason).

¶ 18 Instantly, following Appellee's April 24, 2001 pre-trial conference, the court rescheduled Appellee's trial for May 29, 2001. On that date, however, the trial court had yet another trial in progress, and rescheduled Appellee's trial for July 2, 2001. As the Commonwealth had no control over these circumstances, the 34–day delay between May 29, 2001 and July 1, 2001 is excusable. *See Hunt, supra*; Pa.R.Crim.P. 600(C). As a result, Appellee's adjusted run date was extended from December 21, 2001 to February 28, 2002.

¶ 19 Appellee's counsel was unable to appear at the July 2, 2001 listing. Additionally, counsel notified the court that counsel had a federal death penalty case scheduled to begin in September 2001. In light of counsel's other commitment, the

court rescheduled Appellee's trial for February 20, 2002 (within the adjusted run date of February 28, 2002). Thereafter, court administration reassigned Appellee's case to Judge Rogers. Judge Rogers scheduled a pre-trial conference for January 9, 2002. On that date, Appellee's counsel was at trial in federal court and could not appear at the conference. The trial court rescheduled Appellee's pre-trial conference for January 17, 2002. The delays from July 2, 2001 until January 17, 2002, each occasioned by Appellee's counsel, constituted an additional 199 days of excludable time. *See id.* The new adjusted run date was September 15, 2002.

¶ 20 At the January 17th pre-trial conference, the court set April 8, 2002 as the earliest possible date for Appellee's trial. The 81 days between January 17, 2002 and April 8, 2002 were excusable; the Commonwealth could not control the schedule of the court and the court determined that April 8th was the EPD. *See id.; Williams, supra.* This 81–day delay yielded an adjusted run date of December 5, 2002. However, on April 8th, Appellee's counsel requested another continuance, because he was on trial elsewhere. The court rescheduled Appellee's trial to September 23, 2002. This 168–day delay was excludable, where Appellee's counsel requested the continuance. *See Hunt, supra.* The adjusted run date became May 22, 2003.

¶ 21 Before the September 23, 2002 trial date, court administration reassigned Appellee's case to Judge Mazzola. The court listed the case for September 16, 2002. At the September 16th listing, the court changed the trial date to April 21, 2003 (within the adjusted run date of May 22, 2003). On April 21st, Judge Mazzola was involved in another jury trial. At that time, the court rescheduled Appellee's trial for May 29, 2003, seven days beyond the adjusted run date of May 22, 2003. As a result, we must inquire whether the Commonwealth exercised due diligence and whether the circumstances occasioning this postponement were beyond the Commonwealth's control. We conclude, the 38–day delay, between April 21, 2003 and May 29, 2003 was excusable; the Commonwealth was ready to proceed on April 21st and could not control the fact that Judge Mazzola was involved in another trial. *See id.; Jackson, supra.* On April 25, 2003, Appellee filed his Rule 600 motion to dismiss. On May 29, 2003, the next trial date, Judge Mazzola was unavailable due to illness. Meanwhile, Appellee's Rule 600 motion was pending.

¶ 22 On June 26, 2003, court administration transferred Appellee's case to Judge Sarmina, who scheduled a hearing on Appellee's Rule 600 motion for June 30, 2003. The court scheduled further hearings on Appellee's Rule 600 motion, and the parties presented additional evidence on July 17, 18, 22, and 23, 2003. At the close of these hearings, the court stated:

And regarding the Motion to Dismiss, what I will say is after a careful review of all of the notations in the Quarter Sessions file, that the [c]ourt believes that there is a substantial likelihood that there will have been a basis for the time to have been ruled excludable, either from the notes of testimony or from other documentation that we are going to gather.

But given the fact that you both have very busy trial schedules, the [c]ourt also has a very busy trial schedule, I am not deciding the Motion to Dismiss yet. I am going to continue to receive evidence on that. I am also going to direct that you bring your calendar, Mr. Stein, for 2001 and 2002. And I am also—I have directed Court Administration to compile for me a list of the cases that you were on trial with in Philadelphia

which, obviously, will not reflect your federal cases where I know you spend a great deal of your time, or in the counties, so that we can determine whether some of these continuances which were rather lengthy were solely due to the judges who had the cases, their calendar, or whether it was also because of your schedule, *et cetera.*

So those are the things that I still need to review. And so I am going to, at a subsequent time, assuming that the defendant [was] found guilty, allow the record to be supplemented by both sides prior to making a final ruling.

So I wanted you both to be aware of that. But I do not want to continue to delay this trial since right now we do have the ability to move forward, to begin with jury selection.

And I know I don't really have to tell you, Mr. Stein, but since you handle many of these cases, just how busy you get, how busy your colleagues who handle capital cases get, that it is a very limited number of people who actually practice before the courts in Philadelphia Court of Common Pleas who handle capital cases.

And many of the attorneys that are coming in to see me now for dates, either on brand new cases or on cases that have been reassigned to me due to Judge Mazzola's illness, are telling me that they don't have time available until—and some of them are November; some of them are February.

And so I know that you all get very busy. And I don't think it is fair either to your client or to the other attorneys and their clients to delay this trial any further since, out of a rule consideration, we may have to bump some of them and then cause rule problems there, *et cetera.*

So that is the reasoning upon which the [c]ourt is moving forward. And it's either going to be a not guilty or it will be an issue that will be preserved or that I may very well grant once all of the evidence is in.

(N.T. Rule 600 Hearing, 7/22/03, at 4–7). Appellee's trial commenced on July 28, 2003. The 60–day period, between May 29th and July 28th, in which the court delayed Appellee's trial to address his Rule 600 motion, renders the time excludable. Pa.R.Crim.P. 600(C). The final adjusted run date for Appellee's trial became August 28, 2003. Ultimately, Appellee proceeded to trial 31 days **before** the final adjusted run date.

¶ 23 The following chart summarizes these delays:

| DATES | ACTIVITY | DAYS DELAY | EXCLUDABLE OR EXCUSABLE | ADJUSTED RUN DATE |
|---|---|---|---|---|
| 4/24/01-5/29/01 | Court had another trial in progress; trial rescheduled for 5/29/01 | 35 | Excusable | 1/25/02 |
| 5/29/01-7/02/01 | Court had another trial in progress; trial rescheduled for 7/02/01 | 34 | Excusable | 2/28/02 |
| 7/02/01-1/09/02 | Appellee's counsel could not proceed; counsel's schedule was uncertain; status conference scheduled for 9/07/01; trial tentatively rescheduled for 2/20/02 | 191 | Excludable; Appellee caused delay | 9/07/02 |
| 1/09/02-1/17/02 | Case reassigned to Judge Rogers; listed for 1/09/02, but Appellee's counsel was in federal court; re-listed for 1/17/02 | 8 | Excludable; Appellee requested continuance | 9/15/02 |

| | | | | |
|---|---|---|---|---|
| 1/17/02-4/08/02 | Court determined EPD was 4/08/02; trial rescheduled for 4/08/02 | 81 | Excusable; based on EPD | 12/05/02 |
| 4/08/02-9/23/02 | Appellee's counsel on another trial; case rescheduled for 9/23/02, however, case reassigned to Judge Mazzola prior to 9/23/02 | 168 | Excludable; Appellee's request | 5/22/03 |
| 9/23/02-4/21/03 | Judge Mazzola listed case for 9/16/02; at 9/16/02 listing, court changed trial date to 4/21/03; Commonwealth did not seek earlier date | 210 | No | 5/22/03 |
| 4/21/03-5/29/03 | Court had another trial in progress; trial scheduled for 5/29/03; Appellee filed Rule 600 motion on 4/25/03 | 38 | Excusable | 6/29/03 |
| 5/29/03-6/26/03 | Judge Mazzola unavailable due to illness; case reassigned to Judge Sarmina; Rule 600 hearing scheduled | 28 | Excludable; trial delayed to address Rule 600 motion | 7/27/03 |
| 6/26/03-6/30/03 | Rule 600 hearing began; court scheduled additional hearings | 4 | Excludable; trial delayed to address Rule 600 motion | 7/31/03 |
| 6/30/03-7/28/03 | Additional evidentiary hearings conducted; trial begins 7/28 | 28 | Excludable | 8/28/03 |

¶ 24 While we agree with the trial court that Appellee had no obligation to bring himself to trial, we also note the Commonwealth was ready to proceed at each trial listing. Moreover, delays occasioned by the court's schedule (particularly the judge's calendar and then his illness) and Appellee's counsel's schedule continually plagued this case. Even the trial court recognized the scheduling complexities in capital case trials. Therefore, on this record we cannot say the Commonwealth engaged in any misconduct in an effort to evade Appellee's fundamental speedy trial rights. *See Hunt, supra.* Further, Appellee was brought to trial before the date we have calculated as his final adjusted run date.

¶ 25 Based upon the foregoing, we hold the court erred in dismissing the case against Appellee, where the Commonwealth exercised due diligence and did not engage in any misconduct designed to evade Appellee's fundamental speedy trial rights.[11] Accordingly, we reverse.

¶ 26 Order reversed.

---

11. The procedural posture of the instant appeal is uncommon. The trial court delayed ruling on the defendant's Rule 600 motion to dismiss until after trial, which ended in a hung jury. We have determined the court's post-trial ruling to grant Appellee's pre-trial motion to dismiss was incorrect. Nevertheless, we caution the Commonwealth to be mindful of the applicable time constraints, if it decides to retry Appellee.