J-S68005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TORRENCE WRIGHT, | |
| Appellant | No. 1924 EDA 2013 |

Appeal from the Judgment of Sentence entered June 25, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0000774-2012

BEFORE: ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED NOVEMBER 14, 2014**

Torrence Wright ("Appellant") appeals from the judgment of sentence entered after a jury found him guilty of possession of an instrument of crime and the trial court found him guilty of persons not to possess a firearm.[1]

The trial court summarized the pertinent facts as follows:

> Early in the evening of August 30, 2011, Tyreek Coleman had a fight with an individual in an alleyway in the back of the 1400 block of Stevens Street in Philadelphia, Pa. Mr. Coleman told [Appellant] about the fight.
>
> Later that evening, Mr. Coleman and [Appellant] met on the 1400 block of Stevens Street. After hanging out on Stevens Street with [Appellant], Mr. Coleman left [Appellant] and walked down Stevens Street past a few houses. Mr. Coleman started to talk to his friends and smoke a cigarette. Mr. Coleman heard

---

[1] 18 Pa.C.S.A. § 907 and 18 Pa.C.S.A. § 6105.

gunshots and started to run away. Mr. Coleman, however, was shot in the leg as he was running away.

Mr. Coleman did not know who shot him. Francis Donnelly, however, observed the shooting from his home. Mr. Donnelly, who lives on the 1400 block of Stevens Street, observed a heavyset black man holding a revolver and firing backwards at another shooter. Mr. Donnelly also observed Mr. Coleman getting shot.

Police Officer[s] Daniel Loesch, Sean King, and Crawford – who were on marked police bicycles, immediately responded to a radio call of shots fired on the 1400 block of Stevens Street. Officer Loesch approached the 1400 block of Stevens Street on his bicycle and observed a blue Oldsmobile speed backwards the wrong way down Stevens Street and then turn northbound on Large Street. As the car was headed towards Officer Loesch, Officer Loesch observed that the driver of the car was a heavyset black male wearing a black T-shirt. Officer Loesch attempted to stop the car, but the driver of the car swerved around Officer Loesch and continued to drive.

Officer Loesch sent out another radio call with a description of the car, and a part of the license plate number. Officer King responded to the radio call from Officer Loesch.

Officer King traveled to the 6200 block of Souder Street and observed the vehicle that Officer Loesch had described. Officer King then observed the driver stop the vehicle in the middle of Souder Street. Officer King observed a heavyset black male get out of the driver's side of the vehicle and discard a black handgun under a parked vehicle. The black male then returned to his vehicle and continued driving on Souder Street.

Officer King pursued the vehicle to Roosevelt Boulevard while giving directions over the police radio. Officer Pasquarella, who was in a police car, was able to stop the vehicle on Roosevelt Avenue. Officer Loesch then identified [Appellant] as the driver of the vehicle that he observed on Stevens Street and Large Street. Officer Pasquarella arrested [Appellant].

Officer King then returned to the 6200 block of Souder Street, where [Appellant] had discarded the gun, to hold the

scene for Northeast Detectives to investigate. The scene was unattended for about five minutes.

Detective Casee arrived at the scene of the shooting on the 1400 block of Stevens Street and recovered twelve fired cartridge casings from the street and two different vehicles parked on the street. He then went to the 6200 block of Souder Street and obtained the gun from under the car.

The parties stipulated to the testimony of Officer Wilford, a ballistician, who examined the firearm that Detective Casee recovered. Officer Wilford concluded that the firearm was an operable Revolver 38 Special with a maximum capacity for five bullets.

Officer Wilford also tested the twelve recovered fired cartridge casings found on 1600 Stevens Street or in cars parked on 1600 Stevens Street. Officer Wilford concluded that five of the fired cartridge casings came from a second firearm, which was not a revolver.

Finally, the parties stipulated that [Appellant] did not have a license or permit to carry a gun in Philadelphia on the date of the offense and in fact, had a prior felony conviction which made him ineligible to carry a firearm.

Trial Court Opinion, 1/30/14, at 1-4 (citations to notes of testimony omitted).

On August 31, 2011, the Commonwealth filed a criminal complaint charging Appellant with the aforementioned crimes. On March 24, 2012, Appellant filed a Pa.R.Crim.P. Rule 600 motion to dismiss the charges against him, which the trial court denied. Following a bifurcated trial that commenced on January 25, 2013, the jury found Appellant guilty of possession of an instrument of crime, and not guilty of attempted murder, conspiracy, aggravated assault, and simple assault; the trial court found

Appellant guilty of possession of a firearm by a prohibited person. On May 9, 2013, the trial court sentenced Appellant to 4½ to 10 years of imprisonment for possession of a firearm by a prohibited person, to be followed by 5 years of probation for possession of an instrument of crime. Appellant filed a motion for reconsideration on May 14, 2013, which the trial court granted in part, and entered an amended sentencing order on June 25, 2013, removing the condition that the sentence was to run consecutive to a sentence imposed by another judge in a separate proceeding. Appellant filed a notice of appeal on July 1, 2013. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1.   Did the [trial] court err in denying [Appellant's] motion to dismiss pursuant to Rule 600 where the critical period of delay at issue, while designated a "joint continuance," was in no way the fault of [Appellant] and the time therefore should not have been ruled excludable?

2.   Was the evidence insufficient to support a guilty verdict for possession of an instrument of crime where the jury acquitted [Appellant] of all remaining charges and therefore could not infer that [Appellant] intended to employ the gun for criminal purposes?

3.   Did the [trial court] abuse its discretion in sentencing [Appellant] in the aggravated range of the sentencing guidelines by improperly emphasizing [Appellant's] prior contacts with the criminal justice system and the need to "protect the public," while not giving proper weight to [Appellant's] family support and acceptance of responsibility, resulting in a manifestly excessive sentence for the crime of gun possession?

Appellant's Brief at 4.

In his first issue, Appellant asserts that the trial court erred in denying his motion to dismiss pursuant to Rule 600(G) for failure to commence trial within 365 days of the filing of the complaint. Appellant's Brief at 10-12. Specifically, Appellant argues that the trial court erred in attributing the 48 day delay between December 2, 2011 and January 19, 2012 to a "joint" delay for which both Appellant and the Commonwealth were responsible. *Id.* Appellant maintains that no fault for the delay can be attributed to him, that the delay was attributable to the Commonwealth, and that the delay should not have been ruled excludable. *Id.* Appellant asserts that because of the delay, his trial commenced more than 365 days after the filing of the complaint, and therefore the charges against him should have been dismissed pursuant to Rule 600. *Id.*

Rule 600 was designed "to prevent unnecessary prosecutorial delay in bringing a defendant to trial." *Commonwealth v. Brock*, 61 A.3d 1015, 1021 (Pa. 2013). "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005) (citations and internal quotations omitted). "The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most

favorable to the prevailing party." ***Id***. at 1238-39 (internal citations and quotation marks omitted). Importantly, a court will grant a motion to dismiss on Rule 600 grounds only if a defendant has a valid Rule 600 claim at the time the motion is filed. ***Id***. at 1243.

Rule 600 provides, in pertinent part:

(A)   …

     (3)    Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence ***no later than 365 days from the date on which the complaint is filed.***

\* \* \*

(C)   In determining the period for commencement of trial, there shall be excluded therefrom:

     (1)    the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

\* \* \*

(G)   For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

> If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. ... If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600 (emphasis added).[2]

In the present case, Rule 600 required the Commonwealth to bring a defendant to trial within 365 days of the filing of the criminal complaint. *See* Pa.R.Crim.P., Rule 600(A)(3). Rule 600, however, specifically contemplates that certain periods of time shall be excluded in calculating compliance. In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> 'Excludable time' is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, … any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. 'Excusable delay' is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

---

[2] Prior Rule 600 was rescinded on October 1, 2012, and a revised Rule 600 was made effective on July 1, 2013. *See* 42 Pa.B. 6622. Since "Prior Rule 600" was in effect at the time of the trial court's decision on Appellant's Rule 600 motion, our analysis will focus on that version of the Rule.

*Commonwealth v. Brown, M.*, 875 A.2d 1128, 1135 (Pa. Super. 2005), *appeal denied*, 891 A.2d 729 (Pa. 2005) (*quoting* *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) (*en banc*), *appeal denied*, 875 A.2d 1073 (Pa. 2005).

> To summarize, the courts of this Commonwealth employ three steps ... in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.
>
> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600( [D] ). As we have explained, Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013) (citations omitted). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Brown*, 875 A.2d 1128, 1138 (Pa. Super. 2005) (citations and internal quotations omitted).

- 8 -

Here, the mechanical run date was on or about August 29, 2012 – 365 days after the complaint against Appellant was filed. *See* Pa.R.Crim.P. 600(A)(3). However, the trial did not commence until January 25, 2013, well after the expiration of the 365 day period. Appellant does not dispute any delay except for the 48 days between December 2, 2011 and January 19, 2012. The trial court concluded that this 48 day delay was attributable to both Appellant and the Commonwealth. The trial court explained:

> At the first date for the preliminary hearing, [on December 2, 2011], both parties requested the continuance. The Commonwealth requested a continuance because its eyewitness failed to appear, and the Public Defender requested a continuance because, at that time, he learned that his office had represented the eyewitness in another matter and thus, the Public Defender had a conflict representing [Appellant] in this matter. Since the joint request is excludable time, the trial court properly denied the Motion to dismiss pursuant to Rule 600.

Trial Court Opinion, 1/30/14, at 5-6.

We agree with the trial court's assessment. We find no merit to Appellant's argument that he was prepared to proceed at the December 2, 2011 hearing and that the delay is solely attributable to the Commonwealth. At the December 2, 2011 proceeding, Appellant's counsel from the Office of the Public Defender, requested a withdrawal because of a conflict of interest that precluded the Public Defender's office from representing Appellant. That same day, the trial court entered an order granting the public defender's motion to withdraw and ordered new counsel to be appointed to represent Appellant. Trial Court Order, 12/2/11. Given the December 2,

- 9 -

2011 request by Appellant's counsel to withdraw from representation, the ensuing delay in the progression of Appellant's case was attributable, in part, to Appellant, who, without representation, was unprepared to proceed. Appellant's argument that he was prepared to proceed and that the delay was attributable solely to the Commonwealth is unavailing.

In his second issue, Appellant argues that the evidence was insufficient to sustain his conviction for possession of an instrument of crime. Appellant's Brief at 12-14. Appellant argues that because the jury acquitted him of all the other charges (*i.e.*, attempted murder, conspiracy, aggravated assault, and simple assault), the jury could not infer that he had any intent to employ the firearm for a criminal purpose. *Id.*

In **Commonwealth v. Moore**, --- A.3d ----, 2014 WL 5485706 (Pa., October 30, 2014), our Supreme Court recently addressed "whether a conviction for possession of an instrument of crime ("PIC") may be sustained when a defendant has been otherwise acquitted of related offenses involving the use of that instrument of crime [such as] a firearm." **Moore**, at 1. The High Court unequivocally held that "a defendant's conviction for PIC may indeed stand under such circumstances." *Id*. In reaching this determination, the Supreme Court reiterated "the long standing principles that juries may issue inconsistent verdicts and that reviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit a defendant of a certain offense." *Id.*, at 7. The Supreme Court

- 10 -

observed that "although [the defendant's] murder and attempted murder acquittals may be logically inconsistent with [the defendant's] PIC conviction, in light of our enduring acceptance of inconsistent verdicts in Pennsylvania, we conclude that the acquittals are not grounds for reversal of [the defendant's] PIC conviction." *Id.*, at 8. Given this decision, Appellant's argument regarding his conviction for possession of an instrument of crime is without merit.

In his third issue, Appellant argues that the trial court abused its discretion when it imposed a sentence in the aggravated range of the sentencing guidelines. Appellant's Brief at 14-15. A challenge to the discretionary aspects of a sentence is not appealable as of right. Rather, Appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa. Super. 2004).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) (citations omitted).

Appellant has preserved his claim by filing a post-sentence motion and timely notice of appeal. Appellant has additionally included in his brief a concise statement pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at 9. Therefore, we proceed to determine whether Appellant has raised a substantial question for our review.

Appellant argues that the trial court abused its discretion when it imposed a sentence for possession of a firearm by a prohibited person in the aggravated range of the sentencing guidelines, and in so doing, overemphasized the seriousness of the crime while failing to give proper consideration to the mitigating factors. Appellant's Brief at 9, 14-15. Accordingly, Appellant asserts that the sentence was excessive. Such a claim presents a substantial question for our review. *See Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (claim that the sentencing court focused on the seriousness of the crimes charged, that the sentencing scheme was contrary to the norms underlying the sentencing process and that his sentence was manifestly excessive and unduly harsh); *Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa. Super. 2012) ("allegation that the sentencing court focused exclusively on the seriousness of the crime

raises at least a plausible argument that the sentencing court did not follow the requirements of section 9721").

Our standard of review in sentencing matters is well settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa. Super. 2009).

42 Pa.C.S.A. § 9721(b) states:

[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S. § 9781(c). ***Commonwealth v. Bricker***, 41 A.3d 872, 875-76 (Pa. Super. 2012) (citations omitted). "[T]he term 'unreasonable' generally means a decision that is either irrational or not

- 13 -

guided by sound judgment. [A] sentence can be defined as unreasonable either upon review of the four elements contained in § 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S.A. § 9721(b)." ***Commonwealth v. Daniel***, 30 A.3d 494, 497 (Pa. Super. 2011), *quoting* ***Commonwealth v. Walls***, 926 A.2d 957 (Pa. 2007).

Pursuant to 42 Pa.C.S.A. § 9871, we must have regard for the following statutory factors in our review of the certified record: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation, (3) the findings upon which the sentence was based, and (4) the guidelines promulgated by the commission. 42 Pa.C.S.A. § 9871(d)(1)-(4). Additionally, when evaluating a challenge to the discretionary aspects of sentence, it is important to remember that the sentencing guidelines are purely advisory in nature. ***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007); ***see also Commonwealth v. Walls***, 926 A.2d 957, 963 (Pa. 2007) ("the [sentencing] guidelines merely inform the sentencing decision").

Here, the guidelines recommended a standard range of sentence of 36 to 48 months for possession of a firearm by a prohibited person, +/- 12 months in the mitigated and aggravated ranges. N.T., 5/9/13, at 18. Thus, Appellant's sentence of 54 to 120 months fell within the aggravated range of the guidelines. At the sentencing hearing, the trial court noted that it had

reviewed the pre-sentence investigation report. ***Id.***, at 18. The trial court then heard from Appellant's counsel, who emphasized Appellant's age, family circumstances, educational background, his acceptance of responsibility, and the fact that he was acquitted by a jury of the other charges against him. ***Id.*** at 20-27. Additionally, the trial court heard from Appellant's parents, as well as Appellant himself, who expressed remorse for his actions, and emphasized his efforts to rehabilitate himself. ***Id.*** at 35-45. The trial court then provided the reasons for its sentence on the record as follows:

> I am very concerned about your pattern of criminal activity. You started out back in August of 2006 on the juvenile side. You were sentenced to probation. Then you committed – while you were on probation ... two and a half months later, you committed another crime. The juvenile judge sent you to St. Gabe's. You were at St. Gabes for over a year. You then had aftercare for about a year. And then three months later you're back committing crimes. And I'm not even taking into consideration your arrests.
>
> [On] February 15[th] 2009 ... you committed a PWID. Five months later you committed a VUFA offense, a K & I, and resisting arrest. And another three or four months later you also pled guilty to charges that you committed on those dates of theft by unlawful taking, VUFA, and receiving stolen property. You then served a sentence. You were released in January of 2011 and less than seven months later you committed this crime.
>
> Since 2006 when you haven't been incarcerated you've been committing crimes. And I am only considering here the charges for which you either pled guilty or you were found guilty of. I'm not even taking in consideration arrests. You have an incredibly long history of criminal activity.
>
> ...

You are a threat to the community. I need to do this to protect the public. I am doing this because of the gravity of the offense. And I'm also doing this because of rehabilitative needs. You have been in and out of the system for an incredibly long time. And there has been an effort to rehabilitate yourself. You do need the tools to rehabilitate yourself. You have yet to take advantage of those tools, which is really unfortunate because you come from a good family. You have a lot going for you of your stepmother, your stepfather. You know you're fortunate you have stable men in your life, but you've been too immature for whatever reason to follow their paths.

*Id*. at 55-57.

We conclude that the trial court in this case, after considering the pre-sentence investigation report and the guidelines, placed adequate reasons on the record for its sentencing decision. The trial court appropriately took into account the requisite sentencing factors, including the severity and impact of the crime, Appellant's age and physical and mental health, his expressions of remorse, his criminal history, and his rehabilitative potential to conclude that a sentence of 4½ to 10 years was warranted. We decline to find Appellant's sentence clearly unreasonable. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judge Musmanno joins the memorandum.

Judge Jenkins concurs in the result.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/14/2014