COMMONWEALTH of Pennsylvania, Appellee,

v.

Kelvin O. JONES, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 24, 2005.
Filed Oct. 24, 2005.

Richard A. Webster, Allentown, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for Com., appellee.

BEFORE: BENDER, GANTMAN, and JOHNSON, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Kelvin O. Jones, appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas, following his conviction for first degree murder.[1] Appellant asks us to determine whether the Commonwealth violated his speedy trial rights under the Interstate Agreement on Detainers ("IAD")[2] and Pennsylvania Rule of Criminal Procedure 600. Additionally, Appellant challenges the sufficiency and the weight of the evidence used to support his conviction for first degree murder. We hold the Commonwealth did not violate Appellant's speedy trial rights under either the IAD or Rule 600. Further, we hold the evidence was sufficient to support Appellant's conviction, and the verdict was not against the weight of the evidence. Accordingly, we affirm.

¶ 2 The trial court fully and correctly set forth the relevant facts and procedural history of this appeal as follows:

1. A complaint charging [Appellant] with criminal homicide in Pennsylvania was filed...on October 10, 1999. The complaint listed [Appellant's] address as Riker's Island Prison, New York City, New York.

2. Appellant was then being held by the New York authorities on a homicide charge arising from another homicide in the state of New York.

3. On December 10, 1999, a warrant was issued for [Appellant's] arrest on the Pennsylvania homicide charge.

4. Between December 21, 1999 and March 25, 2002, the Pennsylvania authorities, through Lehigh County Chief Detective Steckel, maintained telephone contact with New York authorities concerning [Appellant's] status in New York and his availability for transfer to Pennsylvania to stand trial for the Pennsylvania homicide. There were over fifty

---

**1.** 18 Pa.C.S.A. § 2502(a).

**2.** 42 Pa.C.S.A. §§ 9101–9108.

contacts made between the Pennsylvania and New York authorities during this time period.

5. On January 12, 2000, the Pennsylvania authorities lodged a detainer against [Appellant] in New York.

6. Shortly after the detainer was lodged, specifically on January 24, 2000, the New York prosecuting attorney informed Detective Steckel that [Appellant] was not available for transfer to Pennsylvania because of his ongoing New York homicide case.

7. On July 16, 2001, [Appellant] entered a plea of guilty to the New York homicide charge and was sentenced on September 25, 2001 to a term of imprisonment of not less than fifteen years to life.

8. Upon learning that [Appellant] had been sentenced in New York, Detective Steckel mailed [IAD] Form V to the New York authorities requesting that they deliver temporary custody of [Appellant] to the appropriate authorities in Pennsylvania for trial on the Pennsylvania homicide charge.

9. However, [Appellant] further delayed his transfer to Pennsylvania by contesting his extradition.

10. Eventually, [Appellant] was extradited to Pennsylvania on March 26, 2002.

11. A preliminary hearing on the Pennsylvania homicide charge was scheduled initially for April 2, 2002. However, at the request of defense counsel the hearing was continued to May 15, 2002.

When defense counsel requested a second continuance, the hearing was rescheduled to June 21, 2002.

12. The Commonwealth requested continuances of the preliminary hearing on June 21, 2002 and July 22, 2002. As a result, the preliminary hearing was again rescheduled and was finally held on August 29, 2002.

13. After the preliminary hearing, [Appellant] was bound over for trial, and his arraignment was scheduled for September 13, 2002.

14. On September 13, 2002, [Appellant] appeared for his arraignment in the company of his then counsel, Maureen Coggins, Esq.

\* \* \*

15. On September 20, 2002, [Appellant] filed [a motion for] pretrial [discovery and inspection], which [was] decided on October 11, 2002.

16. On January 9, 2003, at the request of [Appellant's new counsel], the trial was continued from January 21, 2003 to April 21, 2003.

17. On February 26, 2003, also at the request of [Appellant's] counsel, the trial was continued to September 15, 2003.[3]

18. On September 12, 2003, the...trial [court] was still engaged in the trial of a lengthy products liability case, which was to last an additional one or two weeks. Therefore, the trial of [Appel-

---

**3.** On May 22, 2003, Appellant filed pre-trial motions to compel discovery, to dismiss pursuant to the IAD, and to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600. The court conducted a hearing on these motions on July 18, 2003. By order entered July 18, 2003, the court granted Appellant's discovery motion in part. The court denied the remainder of the motion as moot because the Commonwealth had provided Appellant with the remaining items referred to in Appellant's discovery motion.

Regarding Appellant's claims under the IAD and Rule 600, the court ordered the parties to submit briefs on these issues. On August 20, 2003, the court conducted oral argument. By order entered October 24, 2003, the court denied both motions to dismiss.

lant's] case was rescheduled by the court to begin on September 29, 2003.

19. On September 22, 2003, on the Commonwealth's motion, the trial was continued to November 3, 2003, because the September 29th trial date conflicted with the prosecuting attorney's impending marriage. The continuance was granted in open court in the presence of [Appellant] and his counsel, who indicated they had no objection to the continuance.

(Trial Court Opinion, dated October 23, 2003, at 2–5).

¶ 3 Jury selection for Appellant's trial commenced on November 3, 2003. On November 12, 2003, the jury found Appellant guilty of first degree murder. Appellant received a lifetime prison sentence on November 13, 2003. On November 21, 2003, Appellant filed a post-sentence motion which challenged his conviction based upon the sufficiency and the weight of the evidence. By order entered March 11, 2004, the trial court denied Appellant's post-sentence motion. This timely appeal followed.

¶ 4 Appellant raises four issues for our review:

> DID THE COMMONWEALTH VIOLATE THE [IAD], IN THAT THE TRIAL WAS NOT SCHEDULED WITHIN THE 120–DAY LIMIT?

> DID THE COMMONWEALTH VIOLATE [APPELLANT'S] RIGHT TO A SPEEDY TRIAL PURSUANT TO PENNSYLVANIA RULE 600 BY FAILING TO EXERCISE DUE DILIGENCE IN [BRINGING] THE CASE TO TRIAL WITHIN THE APPLICABLE TIME PERIOD?

> WHETHER THE EVIDENCE WAS SUFFICIENT, AS A MATTER OF LAW, TO SUPPORT A FIRST DEGREE MURDER CONVICTION BASED UPON THE LACK OF ANY EVIDENCE THAT THE KILLING WAS WILLFUL, DELIBERATE OR PREMEDITATED?

> WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT OF GUILTY TO MURDER IN THE FIRST DEGREE SHOULD BE OVERTURNED?

(Appellant's Brief at 3–4).

¶ 5 In his first issue, Appellant asserts that under Article IV(c) of the IAD, a defendant who contests his extradition must be brought to trial within 120 days of his arrival in the receiving state. Appellant avers he contested his extradition from New York to Pennsylvania, and the 120–day time period for his trial began to run on March 26, 2002. Appellant insists, however, that the Commonwealth "failed to act in any way to bring to the court's attention the possibility of a violation of [the] 120–day time period" when the court discussed potential trial dates with the parties at Appellant's arraignment. (Appellant's Brief at 15). Moreover, Appellant contends he did not waive this claim by agreeing to a trial date outside of the 120–day period. Appellant concludes the Commonwealth violated Article IV(a) of the IAD, and he asks this Court to overturn the verdict and dismiss his case. We disagree.

■ ¶ 6 "The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner." *Commonwealth v. McNear*, 852 A.2d 401, 405 n. 3 (Pa.Super.2004) (quoting *Commonwealth v. Davis*, 567 Pa. 135, 138–39, 786 A.2d 173, 175 (2001)).

Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release.

*Id.* (quoting *Davis, supra* ).

¶ 7 Article IV of the IAD sets forth the procedure by which the authorities in the requesting state initiate the transfer:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated. . . .

\* \* \*

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state. . . .

42 Pa.C.S.A. § 9101, Article IV.

■ ¶ 8 "[T]he IAD may be tolled by the defendant's own actions." *Commonwealth v. Montione,* 554 Pa. 121, 126, 720 A.2d 738, 741 (1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999).[4] Article VI(a) of the IAD also addresses periods of delay which do not count toward the 120–day calculation:

In determining the duration and expiration dates of the time periods provided in Article III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

42 Pa.C.S.A. § 9101, Article VI(a).

■ ¶ 9 Significantly, a defendant may waive his rights under the IAD by agreeing to a trial date outside the time periods mandated by the statute. *New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). In *Hill,* both defense counsel and the prosecution agreed on a trial date, which fell outside of the 180–day period mandated by Article III of the IAD.[5] Upon expiration of the 180–day period, and prior to trial, defense counsel moved to dismiss the charges on Article III grounds. The Supreme Court held

---

**4.** In *Montione,* our Supreme Court looked favorably upon this Court's analysis of the IAD's timeliness provisions in *Commonwealth v. Woods,* 444 Pa.Super. 321, 663 A.2d 803 (1995):

Although this court has not previously addressed tolling requirements in relation to the IAD, we find persuasive the analysis and interpretation of the courts that held that delay occasioned by the defendant is excludable, particularly in light of recent application of speedy trial provisions to IAD cases by Pennsylvania courts. *See e.g.* [*Woods, supra* ] (applying speedy trial provisions to the IAD in holding that defendant's

continued presence in federal custody constitutes an inability to stand trial, thereby tolling the statute). The *Woods* court determined that the IAD is consistent with the speedy trial provisions of [Rule 600].

*Montione, supra* at 126, 720 A.2d at 741 (some internal citations omitted).

**5.** Article III of the IAD allows a prisoner against whom a detainer has been lodged to request that he be transferred to the jurisdiction that filed the detainer and be brought to trial within 180 days of his request. 42 Pa. C.S.A. § 9101, Article III.

that the prior agreement to set a trial date beyond the 180–day period waived any subsequent Article III objection. *Id.* at 115, 120 S.Ct. at 664, 145 L.Ed.2d at 567. *Compare Commonwealth v. Mayle,* 780 A.2d 677, 684 n. 15 (Pa.Super.2001) (stating appellant's failure to object to trial date scheduled beyond IAD time limit did not waive subsequent Article III objection, where trial date was not "product of negotiation" between parties).

¶ 10 Instantly, the Commonwealth filed its criminal complaint against Appellant on October 10, 1999. On January 12, 2000, Pennsylvania authorities lodged a detainer against Appellant in New York. Appellant subsequently challenged this detainer; however, New York authorities extradited Appellant to Pennsylvania on March 26, 2002. Under Article IV(c) of the IAD, a defendant who contests his extradition must be brought to trial within 120 days of his arrival in the receiving state. Accordingly, the mechanical run date for Appellant's trial under the IAD was July 24, 2002. *See* 42 Pa.C.S.A. § 9101, Article IV.

▮ ¶ 11 The trial court originally scheduled Appellant's preliminary hearing for April 2, 2002. At that time, Appellant's counsel requested a continuance and the court rescheduled the hearing for May 15, 2002. Appellant's counsel requested a second continuance prior to May 15th, and the court again rescheduled the hearing for June 21, 2002. These two continuances, each attributable to Appellant and his counsel, yielded a delay of eighty (80) days. Because Appellant and his counsel occasioned these continuances, and the court granted the requests for continuances, the 80–day delay between April 2, 2002 and June 21, 2002 is excludable. *See Montione, supra;* 42 Pa.C.S.A. § 9101, Article IV(a). As a result, Appellant's adjusted run date under Article IV became October 12, 2002.

¶ 12 On June 21, 2002, the Commonwealth requested a continuance. The court continued the matter until July 22, 2002, when the Commonwealth requested a second continuance. The court ultimately conducted Appellant's preliminary hearing on August 29, 2002, at which time it bound over Appellant for trial. The court scheduled Appellant's arraignment for September 13, 2002. The following chart summarizes the delays thus far:

| DATES | ACTIVITY | DAYS DELAY | EXCLUDABLE DELAY | ADJUSTED RUN DATE |
|---|---|---|---|---|
| 3/26/02-4/2/02 | Appellant arrives in Pennsylvania. Preliminary hearing scheduled for 4/2/02. | 7 | No | 7/24/02 |
| 4/2/02-6/21/02 | Appellant's counsel requested continuances; hearing ultimately rescheduled for 6/21/02. | 80 | Excludable; Appellant requested continuances | 10/12/02 |
| 6/21/02-7/22/02 | Commonwealth requested continuance; hearing rescheduled for 7/22/02. | 31 | No | 10/12/02 |
| 7/22/02-8/29/02 | Commonwealth requested continuance; hearing rescheduled for 8/29/02. | 38 | No | 10/12/02 |
| 8/29/02-9/13/02 | Preliminary hearing conducted; Appellant bound over for trial. Arraignment scheduled for 9/13/02. | 15 | No | 10/12/02 |

¶ 13 On September 13, 2002, Appellant and counsel appeared for arraignment. At the hearing, the parties discussed possible trial dates:

* * *

THE COURT: Now, let's talk about setting a trial date at this point. We can set this for trial on Monday, December 2nd [2002]. I'm not sure if that will give counsel adequate time to prepare if there are going to be pretrial motions. On the other hand, if that date is suitable, we will set that for trial. If you prefer, I can give you a date in January which would be January 21st [2003], that's a Tuesday after some legal holiday-sorry, Martin Luther King's Day.

[DEFENSE COUNSEL]: Your Honor, the only reason I hesitate is I have another homicide trial on November 12th [2002] that will probably be two weeks long. So I would ask for the court's indulgence as far as the date and ask for the later date in January.

THE COURT: January 21st?

[DEFENSE COUNSEL]: Yes.

THE COURT: Okay. Is that satisfactory to [the Commonwealth]?

[COMMONWEALTH]: Yes.

(N.T. Hearing, 9/13/02, at 7–8).

¶ 14 Here, Appellant's counsel and the prosecutor agreed on a trial date which fell outside of the 120–day period mandated by Article IV of the IAD. This agreement waived Appellant's subsequent Article IV objection. *See Hill, supra.* As the trial court noted in its Rule 1925(a) opinion:

> Defense counsel, in the presence of [Appellant], requested a **later** trial date of January 21, 2003, thereby placing [Appellant's] trial date beyond the 120–day period. Had defense counsel requested an earlier trial date, that could have been arranged. Instead, defense counsel not only agreed to the later trial date, but affirmatively requested it.

(Trial Court Opinion at 9) (emphasis in original).

¶ 15 Unlike the situation in *Mayle,* instantly, the agreed-upon original trial date of January 21, 2003 **was** a "product of negotiation." *See Mayle, supra.* The court suggested multiple trial dates to Appellant's counsel, counsel advised the court of her schedule, and the parties agreed upon a satisfactory date. Thus, Appellant waived his speedy trial rights under the IAD by agreeing to a trial date outside of the 120–day limit provided by Article IV. *See Hill, supra.* Accordingly, the trial court properly denied Appellant's motion to dismiss on IAD grounds.

¶ 16 In his second issue, Appellant asserts that under Rule 600, a defendant must be brought to trial within 365 days from the date on which the complaint is filed. Appellant contends the Commonwealth filed its complaint on December 10, 1999, and lodged a detainer against him with the New York Department of Correction on January 12, 2000. Appellant complains that from January 2000, "the Commonwealth simply waited until [Appellant] was sentenced in New York before taking any significant action to retrieve him and return him to Pennsylvania for prosecution." (Appellant's Brief at 17). Further, Appellant argues the Commonwealth did not exercise due diligence, because it waited until March 2002 to mail IAD Forms VI and VII to New York authorities; and, it requested two continuances of the preliminary hearing. Appellant concludes the Commonwealth violated his speedy trial rights under Rule 600 when his trial did not occur until November 7, 2003, and he asks this Court to overturn the verdict and dismiss his case. We disagree.

¶ 17 "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Brown,* 875 A.2d 1128, 1133 (Pa.Su-

per.2005) (quoting *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc* ), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005)).

> The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

> * * *

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* (quoting *Hunt, supra* at 1238–39).

■ ¶ 18 Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600.   Prompt Trial**

* * *

**(A)**(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

* * *

**(C)** In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

* * *

Pa.R.Crim.P. 600.

> Pursuant to Article I, section 14 of the Pennsylvania Constitution, a defendant charged with a capital crime is not eligible to be released from pretrial incarceration on bail. Thus, the Commonwealth has 365 days to bring an incarcerated first-degree murder defendant to trial. However, to obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges.

*Brown, supra* at 1134 (internal citations and quotation marks omitted).

¶ 19 Further, the Comment to Rule 600 provides:

> Under paragraph (C)(3)(a), in addition to any other circumstances precluding the availability of the defendant or the defendant's attorney, the defendant should be deemed unavailable for the period of time during which the defendant contested extradition, **or a responding jurisdiction delayed or refused to grant extradition;** or during which the defendant was physically incapacitated or mentally incompetent to proceed; or during which the defendant was absent under compulsory process requiring his or her appearance elsewhere in connection with other judicial proceedings.

Pa.R.Crim.P. 600, Comment (emphasis added).

> Under Rule 600(c)(1), time between the filing of the complaint and a defendant's arrest may be excluded from calculation of the trial commencement period, provided the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence. In addition, the Comment to Rule 600 states a defendant is deemed unavailable during the time a responding jurisdiction delays or refuses to grant extradition.

*McNear, supra* at 406 (internal citations omitted).

¶ 20 Under Rule 600, there is a distinction between "excludable time" and "excusable delay":

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, . . . any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attor-

ney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Brown, supra* at 1135 (quoting *Hunt, supra* at 1241).

¶ 21 Additionally, we note:

If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay. *Id.;* Pa.R.Crim.P. 600(C), (G). Even where a violation of Rule 600 has occurred, we recognize:

> [T]he motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and . . . the circumstances occasioning the postponement were beyond the control of the Commonwealth.

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth.

> Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that [defendant] was brought to trial within the time prescribed by Rule [600]. [*Commonwealth v. Aaron*, 804 A.2d 39, 43–44 (Pa.Super.2002) ]. *See also [Commonwealth v. ]Hill, supra* [558 Pa. 238] at 264, 736 A.2d [578] at 592 [1999] (finding Commonwealth exercised due diligence when it initially scheduled trial

well within time requirements of Rule [600] but trial was delayed by actions of defendant beyond Commonwealth's control). Further, this Court has held the Commonwealth exercised reasonable effort when within the run date the Commonwealth was ready to commence trial and was prevented from doing so by an administrative error which resulted in a trial date three days beyond the run date. [*Commonwealth v. ]Wroten, supra* [305 Pa.Super. 340, 451 A.2d 678] at 680–81 [1982] (holding inadvertent administrative error is not enough to defeat due diligence). *See also* [*Commonwealth v. Corbin,* 390 Pa.Super. 243, 568 A.2d 635 (1990) ] (holding inadvertent listing beyond run date due to overburdened docket, meager staff, and administrative breakdown at detention center, excused Commonwealth with respect to unavailability of its witness).

*Id.* at 1138 (quoting *Hunt, supra* at 1241–42). "The matters of availability and due diligence must be judged by what was done by the authorities rather than by what was not done." *McNear, supra* at 406 (quoting *Commonwealth v. DeMarco,* 332 Pa.Super. 315, 481 A.2d 632, 636 (1984) (emphasis in original)).

¶ 22 Instantly, the Commonwealth filed its criminal complaint on October 10, 1999. Therefore, the Rule 600 mechanical run date in this case was October 10, 2000. However, Appellant was incarcerated at Riker's Island Prison in New York when the Commonwealth filed the complaint. On December 10, 1999, the Commonwealth issued a warrant for Appellant's arrest. In the months which followed, Lehigh County police maintained contact with New York officials in an attempt to have Appellant expediently extradited to Pennsylvania. On January 12, 2000, Pennsylvania authorities lodged a detainer against Appellant. On January 24, 2000, New York officials informed the Commonwealth that Appellant would not be available for transfer until the completion of Appellant's New York homicide case.

¶ 23 On July 16, 2001, Appellant entered a guilty plea to the New York homicide charge. On September 25, 2001, the New York court sentenced Appellant to fifteen years to life imprisonment. Shortly thereafter, Lehigh County police sent the appropriate IAD forms to the New York authorities, which requested that they deliver Appellant to Pennsylvania. Appellant contested the extradition, but was ultimately transported to Pennsylvania on March 26, 2002. The 792–day period from January 24, 2000 to March 26, 2002 is excludable because New York, the responding jurisdiction under the IAD, delayed and refused to grant extradition. *See McNear, supra;* Pa.R.Crim.P. 600, Comment. Additionally, Appellant contested extradition. *See id.* These delays yielded an adjusted run date of December 11, 2002 for Rule 600 purposes.

¶ 24 After Appellant arrived in Pennsylvania, the court scheduled his preliminary hearing for April 2, 2002. Appellant's counsel, however, requested two continuances. The court rescheduled the hearing for June 21, 2002. The 80–day period from April 2, 2002 to June 21, 2002 is also excludable, because Appellant's counsel requested the continuances at issue. *See Brown, supra;* Pa.R.Crim.P. 600(C). These delays extended the adjusted run date to March 1, 2003.

¶ 25 Prior to the preliminary hearing scheduled for June 21, 2002, the Commonwealth requested a continuance. The court finally conducted Appellant's preliminary hearing on August 29, 2002. At Appellant's September 13, 2002 ar-

raignment, the court determined the earliest possible date for Appellant's trial was December 2, 2002. The 80–day period between September 13, 2002 and December 2, 2002 was excusable delay, because the court determined that December 2nd was the earliest possible date. *See Brown, supra.* At that point, the adjusted run date was extended to May 20, 2003. The parties, however, agreed to proceed to trial on January 21, 2003. Appellant's counsel requested this delay due to her attachment to another criminal trial set to begin on November 12, 2002. Thus, the 38–day period between December 2, 2002 and January 9, 2003, the date of Appellant's next request for a continuance, is excludable. *See Brown, supra;* Pa.R.Crim.P. 600(C). The adjusted run date under Rule 600 became June 27, 2003.

■ ¶ 26 On January 9, 2003, the court granted Appellant's counsel's request for a continuance of the trial scheduled for January 21, 2003. The application for continuance indicates Appellant's counsel required additional time to prepare and to investigate the case. The court rescheduled trial for April 21, 2003. However, Appellant's counsel filed for another continuance on February 26, 2003. Again, counsel requested additional time to prepare Appellant's defense. On February 27, 2003, the court granted counsel's request, and rescheduled trial for September 15, 2003. The 249–day period from January 9, 2003 to September 15, 2003 is excludable, because Appellant's counsel requested the continuances at issue. *See Brown, supra;* Pa.R.Crim.P. 600(C). These delays produced an adjusted run date of March 2, 2004.

■ ¶ 27 On September 12, 2003, the court was involved in another trial. At that time, the court rescheduled Appellant's trial for September 29, 2003. However, the Commonwealth requested a continuance on September 22, 2003. As the Commonwealth had no control over the circumstances of the court prior to its request for a continuance on September 22nd, the seven-day delay between September 15, 2003 and September 22, 2003 is excusable. *See Brown, supra;* Pa. R.Crim.P. 600(C). Ultimately, Appellant proceeded to trial on November 3, 2003, 127 days **before** the final Rule 600 adjusted run date of March 9, 2004.

¶ 28 The following chart summarizes these delays:

| DATES | ACTIVITY | DAYS DELAY | EXCLUDABLE OR EXCUSABLE | ADJUSTED RUN DATE |
|---|---|---|---|---|
| 10/10/99-1/24/00 | Commonwealth files complaint against Appellant. | 106 | No | 10/10/00 |
| 1/12/00-3/26/02 | New York authorities will not extradite Appellant prior to the outcome of his New York homicide charge. Subsequently, Appellant challenged his extradition to Pennsylvania. | 792 | Excludable; responding jurisdiction delayed extradition and Appellant contested extradition | 12/11/02 |
| 3/26/02-4/2/02 | Appellant arrives in Pennsylvania. Preliminary hearing scheduled for 4/2/02. | 7 | No | 12/11/02 |
| 4/2/02-6/21/02 | Appellant's counsel requested continuances; hearing ultimately rescheduled for 6/21/02. | 80 | Excludable; Appellant requested continuances | 3/1/03 |
| 6/21/02-7/22/02 | Commonwealth requested continuance; hearing rescheduled for 7/22/02. | 31 | No | 3/1/03 |

| | | | | |
|---|---|---|---|---|
| 7/22/02-8/29/02 | Commonwealth requested continuance; hearing rescheduled for 8/29/02. | 38 | No | 3/1/03 |
| 8/29/02-9/13/02 | Preliminary hearing conducted; Appellant bound over for trial. Arraignment scheduled. | 15 | No | 3/1/03 |
| 9/13/02-12/2/02 | Appellant appeared for arraignment. Earliest possible date for trial is 12/2/03. Defense counsel requests 1/21/03 trial date. | 80 | Excusable; earliest possible date for trial is 12/2/02 | 5/20/03 |
| 12/2/02-1/9/03 | Interim between earliest possible trial date for trial and later date requested by Appellant's counsel. | 38 | Excludable; Appellant requested continuance | 6/27/03 |
| 1/9/03-9/15/03 | Appellant's counsel requested continuance; trial rescheduled for 9/15/03 | 249 | Excludable; Appellant requested continuance | 3/2/04 |
| 9/15/03-9/22/03 | Court had another trial in progress; trial rescheduled for 9/29/03 | 7 | Excusable; Commonwealth could not control delay | 3/9/04 |
| 9/22/03-11/3/03 | Commonwealth requested continuance; trial set for 11/3/03. | 42 | No | 3/9/04 |

¶ 29 Moreover, the trial court explained that the Commonwealth took great pains to get Appellant to trial as quickly as possible:

Considering the chronology of events in this case, we find that the Commonwealth has acted with due diligence. When the complaint was filed, [Appellant] was in custody in New York awaiting trial on a New York homicide charge. Detective Steckel maintained almost constant contact with New York authorities in an effort to monitor the New York proceedings, including more than fifty contacts with the New York authorities. On January 24, 2000, he was informed by the New York prosecutor that New York would not make [Appellant] available for transfer to Pennsylvania because of the pending homicide charges in New York. There was nothing further that the Commonwealth could have done until the New York charges were resolved. [Appellant] obtained further delays in his transfer to Pennsylvania by contesting extradition. It was not until March 26, 2002, that the Commonwealth was able to obtain [Appellant's] transfer to Pennsylvania, despite due diligence on the part of the Commonwealth to effect the transfer. Thereafter, aside from continuances of the preliminary hearing from June 21, 2002, until August 29, 2002, the Commonwealth made every effort to proceed. It was continuances requested by [Appellant] and his counsel that have delayed the commencement of the trial from January 21, 2003, to September 15, 2003; and it was the trial judge's unavailability that caused a two-week continuance to September 29, 2003. Moreover, we do not consider it a lack of due diligence by the Commonwealth to seek a continuance because the September 29, 2003, trial date set by the court overlapped with the prosecutor's wedding plans.

The Commonwealth is not required to demonstrate that it acted with perfect diligence and punctilious care, but only

that it acted with due diligence, *i.e.*, that it made reasonable efforts to proceed with trial. We are satisfied that the Commonwealth has acted with due diligence in this case.

(Trial Court Opinion at 13–14) (internal citations omitted). We accept the trial court's due diligence analysis and conclude that the trial court properly denied Appellant's Rule 600 motion. *See Brown, supra.*

¶ 30 In his third issue, Appellant argues the Commonwealth needed to demonstrate three elements to prove his guilt on the charge of first degree murder: 1) the victim was unlawfully killed; 2) Appellant did the killing; and 3) Appellant killed the victim in an intentional, deliberate and premeditated way. Appellant contends the testimony from eye witness Christopher Moore established that the victim reached for a gun in his waistband, at which point Appellant stepped back, drew his own gun and fired the fatal shot. Appellant argues he acted in self-defense, and Mr. Moore's testimony was not sufficient to support the jury's finding of an intentional, premeditated killing. Appellant concludes this Court must overturn the verdict and remand the case for a new trial. We disagree.

¶ 31 The relevant standard of review for a challenge to the sufficiency of evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones,* 874 A.2d 108, 120–21 (Pa.Super.2005) (quoting *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003)).

> To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he... unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner. It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. Specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital [part] of the victim's body.

*Commonwealth v. Sattazahn,* 563 Pa. 533, 540–41, 763 A.2d 359, 363 (2000). Further, "it is for the fact finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Baez,* 759 A.2d 936, 939 (Pa.Super.2000), *appeal denied,* 565 Pa. 662, 775 A.2d 800 (2001).

¶ 32 Instantly, Mr. Moore testified that he spoke to the victim on March 12, 1998. The victim asked Mr. Moore where he could obtain crack cocaine. Mr. Moore told the victim that Appellant might be able to provide the crack cocaine, and the victim agreed to drive Mr. Moore to Appellant's residence. Subsequently, Mr. Moore introduced the victim to Appellant. Unbeknownst to Mr. Moore, the victim carried a firearm in his waistband. After a brief conversation outside Appellant's residence, Appellant noticed the victim's firearm and went into his residence to retrieve his own firearm.

¶ 33 Appellant then invited Mr. Moore and the victim into his residence. Mr. Moore recounted the events which followed:

> [Appellant] said all right [to the victim]. I'm gonna check you [for a weapon]. If you have a gun, I'm going to take the gun off of you and we can talk.
>
> * * *
>
> [The victim] put his hands up and [Appellant] was checking him-he checked him on the right side and then he-when he checked him on the other side, [the victim] put his hand down. He put his right hand down. When he put his right hand down, [Appellant] stepped back and he shot him in the head.

(N.T. Trial, 11/10/03, at 43, 44). Mr. Moore indicated Appellant shot the victim at "point blank range." (*Id.* at 45).

¶ 34 The evidence reveals Appellant used deadly force, at close range, on a vital part of the victim's body, causing death. *See Sattazahn, supra.* Although Appellant suggests he shot the victim in self-defense, the finder of fact was free to reject this contention. *See Baez, supra* (stating jury was free to reject appellant's argument that "when he pulled the gun on Victim he was fearful that Victim was about to shoot him"). Therefore, we conclude the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to sustain Appellant's conviction for first degree murder. *See Jones, supra.*

¶ 35 In his final issue, Appellant insists the evidence established that he acted in self-defense because the victim had reached for a gun. Appellant emphasizes that the Commonwealth failed to demonstrate he acted with a specific intent to kill, which is a necessary element of the crime of first degree murder. Appellant concludes the verdict is so contrary to the weight of the evidence that it shocks one's sense of justice, and this Court must overturn the verdict and remand the case for a new trial. We disagree.

¶ 36 Our review of claims challenging the credibility of the witnesses and the weight the court placed on their testimony is subject to the following principles:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Forbes,* 867 A.2d 1268, 1272–73 (Pa.Super.2005) (quoting *Commonwealth v. Champney,* 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied,* 542

U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)) (internal citations omitted). "It is not the function of an appellate court to re-assess the credibility of the witnesses' testimony." *Id.* (citing *Commonwealth v. Aguado,* 760 A.2d 1181, 1184 (Pa.Super.2000) (*en banc* )).

¶ 37 Instantly, Mr. Moore's testimony established that Appellant used deadly force, at close range, on a vital part of the victim's body, causing death. Moreover, Mr. Moore's testimony was corroborated by physical evidence. For example, the Commonwealth presented expert testimony from a forensic pathologist about the gunshot wound which caused the victim's death. This expert testified, to a reasonable degree of scientific certainty, that the victim died by homicide, and the gun with which the victim had been shot, was fired from "about a half an inch to about two to three feet" away. Thus, the jury's verdict is not so contrary to the evidence as to shock one's sense of justice. *See id.*

¶ 38 Based upon the foregoing, we hold the Commonwealth did not violate Appellant's speedy trial rights under either the IAD or Rule 600. Further, we hold the evidence was sufficient to support Appellant's conviction, and the verdict was not against the weight of the evidence. Accordingly, we affirm Appellant's judgment of sentence.

¶ 39 Judgment of sentence affirmed. Jurisdiction is relinquished.