J-S58041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUAN CARLOS SALCIDO | |
| Appellant | No. 128 MDA 2015 |

Appeal from the Judgment of Sentence December 15, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002353-2011

BEFORE: GANTMAN, P.J., OLSON, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:             **FILED DECEMBER 16, 2015**

Appellant, Juan Carlos Salcido, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his bench trial convictions for two (2) counts each of delivery of a controlled substance, simple possession, and possession of drug paraphernalia.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. In July 2009, Appellant was a subject of an undercover drug investigation carried out by the Pennsylvania State Police ("PSP") and the Berks County Drug Task Force. PSP Trooper Charity Farrell conducted surveillance on

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

Appellant and observed him sell drugs to an undercover officer. On July 24, 2009, Trooper Farrell and Trooper Robert Hipp executed a search warrant on Appellant's parents' house, where Appellant lived at the time. Appellants' parents and brother were present. On that same date, Trooper Farrell and Detective Stephen Brock interviewed Appellant at the PSP headquarters in Reading. Appellant expressed interest in cooperating with ongoing drug investigations. Trooper Farrell exchanged phone numbers with Appellant and released him. Trooper Farrell's subsequent attempts to reach Appellant by telephone were unsuccessful. Appellant made no calls to Trooper Farrell either.

The Commonwealth filed a criminal complaint against Appellant on September 21, 2009. An arrest warrant was issued on that same day. The arrest warrant was made part of a countywide sweep that occurred on September 23, 2009, but the police were unable to serve the warrant on Appellant because he had made himself unavailable. On that same date, Trooper Farrell also called Appellant on his cell phone and on his house phone but received no answer. Trooper Farrell also entered Appellant's information into the National Crime Information Center ("NCIC") and Commonwealth Law Enforcement Assistance Network ("CLEAN") databases. On September 29, 2009, Trooper Farrell went to Appellant's residence but he was not there. Trooper Farrell told Appellant's parents that she had a warrant for Appellant's arrest. Trooper Farrell was unsure if Appellant's parents understood her because they spoke little English. On October 7,

2009, Trooper Farrell entered information into NCIC and CLEAN on a vehicle Appellant was known to drive. In January 2010, Trooper Farrell entered Appellant's information into Crime Stoppers. During that month, Trooper Farrell also contacted Berks County Prison to see if Appellant had been arrested for any reason. Additionally, Trooper Farrell regularly checked NCIC and CLEAN to ensure Appellant's information was still active. Trooper Farrell ultimately filed a fugitive notice for Appellant on March 3, 2011. On March 16, 2011, Trooper Hipp went to Appellant's residence and tried again to serve the arrest warrant but nobody was home. The Reading police ultimately located and arrested Appellant on May 14, 2011.

The Commonwealth's information charged Appellant with two (2) counts each of delivery of a controlled substance, simple possession, and possession of drug paraphernalia. On December 15, 2011, Appellant filed a motion to dismiss the charges pursuant to Pa.R.Crim.P. 600. Following a hearing, the court denied the Rule 600 motion on February 13, 2012. The case proceeded to a bench trial, and the court convicted Appellant of all charges on December 15, 2014. On that same date, the court sentenced Appellant to a term of three (3) years' probation.

Appellant filed a timely notice of appeal on January 14, 2015. On January 26, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). The order was

served on January 28, 2015. Appellant filed a Rule 1925(b) statement on February 19, 2015.[2]

Appellant raises the following issue for our review:

> DID THE [TRIAL] COURT ERR IN DENYING [APPELLANT'S] PRETRIAL MOTION FOR DISMISSAL UNDER RULE 600 WHERE 597 DAYS PASSED BETWEEN THE FILING OF THE CRIMINAL COMPLAINT AND [APPELLANT'S] ARREST?

(Appellant's Brief at 4).

In his sole issue, Appellant argues he was arrested more than 365 days after the criminal complaint had been filed. Appellant contends the Commonwealth wrongly inferred, without any basis in fact, that Appellant had fled to avoid arrest. Appellant claims the Commonwealth failed to exercise due diligence to apprehend Appellant and bring his case to trial within the time requirements of Pa.R.Crim.P. 600. Appellant asserts there is no evidence that any police officer actually attempted to serve Appellant's arrest warrant during the countywide sweep in September 2009. Appellant also discounts Trooper Farrell's visit to Appellant's home because Trooper Farrell was unsure if Appellant's parents understood anything she said. Appellant alleges the next attempt to arrest Appellant at his home was made

---

[2] Appellant's Rule 1925(b) statement was untimely. Nevertheless, this Court may address the merits of a **criminal** appeal where a defendant files an untimely Rule 1925(b) statement, if the trial court had adequate opportunity and chose to prepare an opinion addressing the issue(s) raised on appeal. *See Commonwealth v. Burton*, 973 A.2d 428 (Pa.Super. 2008) (*en banc*). Here, the trial court filed a Rule 1925(a) opinion, which addresses Appellant's sole issue raised on appeal. Therefore, we decline to waive Appellant's issue.

541 days after the criminal complaint had been filed. Appellant further argues that entry of his information into law enforcement databases, and Trooper Farrell's act of checking Berks County Prison, were insufficient to comply with Rule 600. Appellant characterizes these actions as "space-holding efforts at best," and claims, "[N]o evidence [exists] that [Appellant] was not still living at home with his parents and working/playing where he always worked or played." (Appellant's Brief at 13-14). Appellant concludes the trial court should have granted his Rule 600 motion and dismissed all charges. We disagree.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005).

> The proper scope of review…is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

The version of Rule 600 in effect at the relevant time of Appellant's case provided, in pertinent part:

### Rule 600.  Prompt Trial

\* \* \*

[(A)](3)  Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \*

(C)  In determining the period for commencement of trial, there shall be excluded therefrom:

(1)  the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence[.]

Pa.R.Crim.P.  600(A)(3),  (C)(1)  (prior  version).[3]  "Rule  600  generally requires the Commonwealth to bring a defendant…to trial within 365 days of the date the complaint was filed."  *Hunt, supra* at 1240.  To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief.  *Id.* at 1243.

"The  mechanical  run  date  is  the  date  by  which  the  trial  must commence under Rule 600."  ***Commonwealth v. McNear***, 852 A.2d 401,

_____

[3] A new version of Rule 600 went into effect on July 1, 2013, after the trial court had disposed of Appellant's Rule 600 motion.

406 (Pa.Super. 2004).

> It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.*

In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Hunt, supra* at 1241 (internal citations and footnote omitted).

Even where a violation of Rule 600 has technically occurred, we recognize:

> [T]he motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and…the circumstances occasioning the postponement were beyond the control of the Commonwealth.
>
> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does

- 7 -

not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth.

***Commonwealth v. Brown***, 875 A.2d 1128, 1138 (Pa.Super. 2005), *appeal denied*, 586 Pa. 734, 891 A.2d 729 (2005) (quoting ***Hunt, supra*** at 1241-42) (emphasis in original). "The matters of availability and due diligence must be judged by what was done by the authorities rather than by what was not done." ***Commonwealth v. Jones***, 886 A.2d 689, 701 (Pa.Super. 2005), *appeal denied*, 587 Pa. 686, 897 A.2d 452 (2006). "The only occasion requiring charges to be dismissed occurs if the Commonwealth fails to bring the defendant to trial within three hundred sixty-five days, taking into account all excludable time and excusable delay." ***Commonwealth v. Murray***, 879 A.2d 309, 314 (Pa.Super. 2005).

Instantly, the trial court found as follows:

14. [Trooper Farrell] testified that she drafted an arrest warrant for [Appellant] on September 21, 2009 for the buys that had taken place [in July 2009,] not having anything to do with the search warrant that was issued. The arrest warrant was issued September 21, 2009[,] and [Appellant] was to be part of a county round-up of other [d]efendants.

15. Trooper Farrell testified that she tried calling [Appellant] on his cell phone and his house phone and had no response.

16. Trooper Farrell testified she entered [Appellant] into NCIC/CLEAN and entered his vehicle into both as well and that she had gone to his parents' house looking for him.

17. Trooper Farrell testified she checked with Berks County Prison to make sure [Appellant] was not in jail. She posted [Appellant] on Crime Stoppers locally.

18. [Trooper Farrell] testified that when the arrest warrant went down, [Appellant] was living with his parents so that is why she went to that home.

19. [Appellant] was picked up in 2011 by the Reading Police Department. And [Trooper Farrell] testified [that Appellant] was born in Mexico.

20. The trooper testified about Exhibits 1, 2, and 3 relating to the testimony and NCIC.

21. Trooper Robert Hipp testified that he works with the Pennsylvania State Police in Troop L in Reading and that his job is to serve warrants and look for wanted people.

22. Trooper Hipp was assigned the warrant and attempted to serve it by going to the address on Greenwich Street and he made no contact with anybody there[,] which occurred in March of 2011.

* * *

In this matter, the [c]ourt finds that the Commonwealth used due diligence.

(Trial Court Order, filed February 13, 2012, at 3-6).[4] The record supports the court's conclusion, and we see no reason to disturb it. The Commonwealth filed the criminal complaint on September 21, 2009. Thus, the initial mechanical run date was September 21, 2010. Nevertheless, the police were unable to arrest Appellant until May 14, 2011, because his whereabouts were unknown. We agree with the trial court that the Commonwealth exercised due diligence to apprehend Appellant during the

_____

[4] In addition, Trooper Farrell filed a fugitive notice for Appellant on March 3, 2011.

- 9 -

period between the filing of the criminal complaint and the date of his arrest. Appellant's attempt to find fault with certain actions the police took is unpersuasive. "Perfect vigilance" and "punctilious care" were not required. The trial court acted within its discretion when it concluded that, viewed together, the officers' actions amounted to reasonable efforts to locate and arrest Appellant. *See Brown, supra*; *Jones, supra*; *Hunt, supra*. Therefore, the delay between September 21, 2009 and May 14, 2011 constituted 600 days of excludable time. *See Hunt, supra*. This excludable time yielded an adjusted trial run date of May 13, 2012. Appellant filed his Rule 600 motion on December 15, 2011, which preceded the adjusted run date. Thus, Appellant did not have a viable Rule 600 claim when he filed his motion to dismiss. *See id.* Therefore, the court properly denied Appellant's Rule 600 motion. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2015

- 10 -