J-A05041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MAKKAH DILLARD, | |
| Appellant | No. 981 EDA 2015 |

Appeal from the Judgment of Sentence July 2, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005276-2012; CP-51-CR-0006607-2012

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 15, 2016**

This is an appeal from the judgment of sentence imposed after a jury convicted Appellant of multiple sexual offenses and related charges.  We affirm.

The facts and procedural history may be summarized as follows: In 1998, four-year-old A.F. lived with her mother and four of her siblings.  The family moved about often, and was in and out of homeless shelters.  A.F. also lived with an aunt for a period of time, and for some unknown reason, A.F. was treated differently than the other children.  A.F. was put in an unfurnished room and her siblings would bring food to her.  Appellant, her older half-brother, who did not live at the same address, came into A.F.'s room one night and told her to take off her clothes.  When she did not do so, he hit her with an open hand.  Appellant then removed A.F.'s clothes and put

*Former Justice specially assigned to the Superior Court.

his penis in her vagina. Over the course of approximately one year, Appellant repeatedly sexually assaulted A.F., sometimes digitally penetrating her, and at other time forcing her to perform oral sex on him.

At trial, A.F., then age nineteen, testified that the abuse began in 1998 and continued for approximately a year. In other documents admitted at trial, however, A.F. was recorded as stating that the abuse continued until she was seven or eight years of age. A.F. also testified that she did not tell anyone because Appellant told her, "Don't tell nobody. Nobody would believe [you]." N.T., 7/24/13, at 28. According to the victim, the abuse ended when "[Appellant] just disappeared. He just stopped coming around." *Id.* At trial, it was stipulated that Appellant was incarcerated from April of 1999 until April of 2006. N.T., 7/26/13, at 8.

A.F.'s mother died when A.F. was nine years old, and she was left to live with family members. When she was thirteen years old, A.F. entered foster care. At the age of seventeen, A.F. went to live with a new foster mother, D.M, with whom she developed a good relationship. In December, 2011, A.F. decided to write D.M. a letter about her childhood, including an admission of how she had been sexually abused by "my one older brother." N.T., 7/24/13, at 107. D.M. showed the letter to A.F.'s caseworker, and then A.F. gave a statement to police, in which she identified Appellant as the perpetrator of the abuse.

In 2006, Appellant was released and married M.J., a woman who already had a son, J.J. The couple also had a son born to the marriage. In

2009, Appellant was watching the boys while his wife was at work. At that time, J.J. was approximately four years of age. While watching cartoons in a bedroom, Appellant told J.J. to "rub his private part," N.T., 7/25/13, at 23, and J.J. complied. J.J. told his mother when she got home, and M.J. confronted Appellant about the allegation. According to M.J., although Appellant initially neither admitted nor denied the act, he later admitted to it, explaining that it was "a lesson for [J.J.] saying this is not what you're supposed to do. By making [J.J. rub Appellant's penis], that was a lesson for [J.J.] not to do it." *Id.* at 64.

In 2010, Appellant was once again incarcerated. In 2012, while Appellant remained incarcerated, a police detective investigating A.F.'s case contacted M.J. after discovering that she was married to Appellant. After learning that Appellant had abused another child, M.J. decided to tell the detective about the incident involving J.J. and Appellant. Subsequently, Appellant was arrested on numerous offenses as a result of the assaults of both A.F. and J.J. A jury convicted Appellant on all charges with regard to each victim. On July 2, 2014, the trial court imposed an aggregate sentence of ten to twenty years of imprisonment. This timely appeal follows. Appellant was not directed to comply with Pa.R.A.P. 1925(b), and the trial court, having retired from the bench, did not file a Rule 1925(a) opinion.

Appellant raises the following issues on appeal:

A. WAS IT ERROR TO DENY APPELLANT'S MOTION TO SEVER CASES [INVOLVING A.F. AND J.J.]?

B. WAS THE EVIDENCE INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH APPELLANT'S GUILT BEYOND A REASONABLE DOUBT ON THE CHARGE OF RAPE AND RELATED OFFENSES?

C. WHETHER A NEW TRIAL SHOULD BE AWARDED IN THE INTERESTS OF JUSTICE BECAUSE THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?

Appellant's Brief at 8.  We will address these issues in the order presented.

Appellant first asserts that the trial court erred in denying his motion to sever the two cases.  He essentially claims that the trial court erred in failing to sever the two cases because he was prejudiced by the introduction of "prior bad acts."  **See** Appellant's Brief at 31-43.  Appellant also claims that the Commonwealth never filed a motion to consolidate the cases, failed to provide notice in accordance with Pa.R.Crim.P. 582(a), and otherwise violated the pertinent rules of criminal procedure.

Our review of the record supports that Commonwealth's assertion that Appellant waived this claim by failing to raise these theories as a basis to sever the cases before trial.  **See** Commonwealth's Brief at 6-7.[1]  Prior to trial, the court disposed of several motions filed by the parties.  The trial court held a hearing on the motions on June 7, 2013.  The issue regarding

---

[1] The fact that Appellant raised a severance issue in his post-sentence motion does not alter our waiver finding.  **See Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1288-89 (Pa.Super. 2004) (*en banc*) (explaining that a defendant may not raise a claim in a post-sentence motion that was not properly preserved at the appropriate stage of the trial proceedings).

severing the cases arose when, while discussing discovery issues regarding the victims' mental health records, the Commonwealth informed the trial court that it had received full records concerning J.J., but had yet to receive the relevant records concerning A.F. *See* N.T., 6/7/13, at 24-28. The following exchange then occurred:

> THE COURT: Well, what do we do?
>
> [DEFENSE COUNSEL]: Well, I suggest that we go forward on [A.F.'s] matter as planned and we just give [J.J's] matter another trial date.
>
> [THE PROSECUTOR]: Your Honor, I'm not willing to sever these cases at this time. These cases have always been together. It is not appropriate to sever these cases.

N.T., 6/7/13, at 28. The court and the parties then discussed the delay in receiving the full records vis-à-vis Appellant's right to a fair trial. Defense counsel informed the court that he could present a defense to A.F.'s case without reviewing the records at issue. The prosecutor then opined that severance was not necessary:

> [THE PROSECUTOR]: Then, Judge, if that is the case and if [defense counsel] does not need [A.F.'s] records and he can go forward to trial, and I just passed [J.J.'s] records, then why can't we proceed on both?

*Id.* at 31.

After discussing, how much time should be afforded to await receipt of A.F.'s records, the trial court ultimately concluded:

> THE COURT: Well, if we don't get [A.F.'s records] in, then I'll order the severance and let the Superior Court decide what's

> appropriate. We have a full record as to what we have done. And at that point we'll either sever it, dismiss it, or do whatever.

*Id.* at 35. After the parties began to discuss the difficulties in scheduling the next hearing, defense counsel asked, "Based on the scheduling, would you reconsider my request to sever in this matter?" *Id.* at 36. The trial court answered negatively, and then informed his staff that "defense counsel's motion to sever [] is denied at this time." *Id.* at 37.

As indicated *supra*, Appellant did not raise the issues he now asserts in his appellate brief when discussing the issue of severance prior to trial. Thus, his first issue involves claims that are inappropriately being raised for the first time on appeal, and are, therefore, waived. ***See generally***, Pa.R.A.P. 302(a).

Even if not waived, we would also agree with the Commonwealth's assertion that Appellant's claim warrants no relief. As recited above, despite any procedural rule violation, Appellant had actual notice that the criminal informations would be tried together. Moreover, there is sufficient commonality between the two incidents and the evidence supporting the crimes against each victim could be easily separated by the jury. Finally, although a lengthy period of time occurred between the instances, this factor must be placed in the context of Appellant's term of incarceration during that time. ***See***, ***e.g.***, ***Commonwealth v. Tyson***, 119 A.3d 353, 361 (Pa.Super. 2015) (*en banc*) (explaining that "Appellee's time spent in prison must be excluded [from] the calculation of how much time has elapsed since

the prior crime"); ***Commonwealth v. Smith***, 47 A.3d 862, 866-69 (Pa.Super. 2012).

Appellant next claims that the evidence was insufficient to support his multiple convictions for offenses perpetrated upon A.F.[2]  Rather than discussing a specific element of any crime, Appellant asserts that A.F.'s testimony "was so unreliable, uncertain and contradictory to identify [him] as A.F.'s alleged rapist that the jury's verdict could only have been arrived at through speculation and conjecture."  Appellant's Brief at 45-46 (citing ***Commonwealth v. Kankaria***, 625 A.2d 1167 (Pa. 1993).  We disagree.

Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the [finder] of fact while passing upon the credibility of witnesses

---

[2] Appellant does not challenge his convictions relating to J.J.

and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 886 A.2d 689, 704 (Pa.Super. 2005) (citations omitted).

Regarding prosecutions for sex offenses, Section 3106 of the Crimes Code provides that "[t]he testimony of the complainant need not be corroborated in prosecutions under this chapter." 18 Pa.C.S.A. § 3106. Our review of A.F.'s testimony pursuant to the above standard of review refutes Appellant's claim that "the record is riddled with critical inconsistencies regarding identity." Appellant's Brief at 48. Although evidence was introduced at trial involving inconsistencies given by A.F. during the criminal investigation as to the time, place, and frequency of the offenses, A.F. clearly identified Appellant as the perpetrator. ***See*** N.T., 7/24/13, 23-33. Moreover, our review of the record confirms that any inconsistencies with regard to these facts were properly resolved by the fact finder. ***See, e.g.***, ***Commonwealth v. Baskerville***, 681 A.2d 195, 199 (Pa.Super. 1996) (explaining that a mere conflict in the testimony of the witnesses does not render evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony and whether to believe all, part, or none of the evidence adduced); ***see also Jones***, ***supra***. Thus, Appellant's sufficiency challenge is meritless.

In his final claim, Appellant asserts that his convictions were against the weight of the evidence. Our review of the record reveals that Appellant failed to preserve his claim in the trial court, and therefore, it is waived on appeal. ***See generally***, Pa.R.Crim.P. 607; ***Commonwealth v. Griffin***, 65 A.3d 932 (Pa.Super. 2013). Thus, we will not consider it further.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2016