J-S90003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM DRUMMOND | : | |
| | : | |
| Appellant | : | No. 1998 EDA 2015 |

Appeal from the Judgment of Sentence June 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004390-2013

BEFORE: OTT, SOLANO, and JENKINS, JJ.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 24, 2017**

William Drummond appeals from the judgment of sentence imposed on June 9, 2015, in the Court of Common Pleas of Philadelphia County following his conviction by a jury on charges of burglary, criminal trespass, possessing an instrument of crime, and terroristic threats.[1] Drummond received an aggregate sentence of ten to 26 years' incarceration. In this timely appeal, Drummond raises two issues; he claims the trial court (1) erred in failing to grant his motion to dismiss pursuant to Pa.R.Crim.P. 600 (regarding speedy trials), and (2) abused its discretion in imposing a

_____

[1] 18 Pa.C.S. §§ 3502(c)(1), 3503(a)(1)(ii), 907(a) and 2706(a)(1), respectively.

manifestly excessive sentence. After a thorough review of the submissions

by the parties, relevant law, and the certified record, we affirm.

The underlying facts of this matter, as recited by the trial court in its

Pa.R.A.P. 1925(a) opinion are as follows:

> In the early morning of December 12, 2012, Alexander Velez was asleep on the couch in his home at 2153 East Stella Street in Philadelphia. Also in the home with Mr. Velez were his brother, John Settle, and a friend of John's named Joe. Around 1:35 a.m., Mr. Velez was woken up by a loud banging sound and discovered that the front door, which was dead-bolted and bar-locked, had been kicked in. Standing in the door-way was [Drummond]. Mr. Velez stood up and addressed [Drummond], asking "What are you doing? What is going on here?" At that point, Mr. Velez noticed Lou Mostak standing behind [Drummond] in the doorway. Mr. Velez had known Lou Mostak from the neighborhood as children and was reintroduced to him about two years prior to this incident by a mutual friend, Tracey. On the night in question, Mr. Velez had not invited [Drummond] or Lou Mostak to come to his home.
>
> While Mr. Velez took his attention away from [Drummond] to address Lou Mostak, [Drummond] put a knife to Mr. Velez's throat. Mr. Mostak stated, "I want Flacco. I want the watch." Mr. Velez knew who Flacco was, but did not associate with him and did not have a watch belonging to Mr. Mostak. [Drummond] was holding the knife across Mr. Velez's neck with his right hand. The knife was about 16-17 inches in length. Mr. Velez was yelling to Mr. Mostak, "Call your man off" to which Mr. Mostak responded[,] "I will call him off when you find the watch."
>
> While [Drummond] held the knife to Mr. Velez's throat, Mr. Velez held the blade with his left hand to keep the knife from digging into his neck and received a deep laceration on his left pinky finger. At this point a neighbor, believed to be named Will, happened to walk by and see the door wide open. While the neighbor distracted [Drummond] and Mr. Mostak, Mr. Velez pushed [Drummond's] right wrist away from him and was able to escape the house. Mr. Velez ran out of his house about a block and a half to the home of another neighbor named Pam

and stayed there about five minutes. As Mr. Velez was running out of his house, [Drummond] and Mr. Mostak followed him. Mr. Velez ran past a vehicle belonging to Mr. Mostak. While running, Mr. Velez heard Mr. Mostak yell out "stop or I will shoot you." Mr. Velez turned around and saw Mr. Mostak holding a gun. Mr. Mostak fired one shot, which did not hit Mr. Velez.

While at his neighbor Pam's house, Mr. Velez [] called the police. After leaving Pam's home, Mr. Velez returned home and Officer Kober was at his home. Mr. Velez was then taken to the police station where he spoke with Detective Aitken. Upon receipt of a search warrant of a home at 2311 Arthur Street, where Louis Mostak was living, police went to the property and found Mr. Mostak and [Drummond]. Both men were taken into custody. Based on the description given by Mr. Velez of the vehicle driven by Mr. Mostak and [Drummond], Detective Aitken obtained a warrant for the vehicle parked outside of 2311 Arthur Street. Upon searching the vehicle, Detective Aitken discovered a Bowie knife, hospital paperwork in the name of Louis Mostak, a check bearing the name Dream Machine Works Company, and a AAA card in the name of Louis Mostak, Detective Aitken noticed three small dots that he believed to be blood on the Bowie knife. Detective Aitken swabbed the Bowie knife and had another detective obtain a DNA sample from Mr. Velez. Miss Ja'neisha Hutley, a Forensic Scientist for the City of Philadelphia, testified that to a reasonable degree of scientific certainty, the three brown spots on the Bowie knife were blood. Another Forensic Scientist, Lynn Haimowitz, testified that the dots on the knife were positive for DNA and that the DNA was, to a reasonable degree of scientific certainty, a match to Mr. Velez.

Trial Court Opinion, 4/7/2016 at 2-4.

In his first claim, Drummond argues the trial court erred in failing to dismiss the charges against him when the Commonwealth failed to exercise due diligence in bringing him to trial within 365 days of the complaint being filed. Pa.R.Crim.P. 600(A)(2)(a) provides:

(2) Trial shall commence within the following time periods:

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a).

The rule further states:

For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of time within which trial shall commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

Here, the complaint was filed on December 14, 2012. Drummond filed his Rule 600 motion on June 23, 2014. It is important to recognize that Rule 600 was amended on October 1, 2012, with those amendments becoming effective on July 1, 2013. Accordingly, Rule 600 changed during the relevant time period. In his motion to dismiss and Appellant's Brief, Drummond refers to the new Rule 600[2]. Therefore, we analyze his argument using the current rule. The comment to Rule 600 provides two noteworthy, relevant, statements. First,

[i]n 2012, former Rule 600 was rescinded and new Rule 600 adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule. The new rule incorporates from former Rule 600 the provisions

_____

[2]  Additionally, we note the motion to dismiss was filed almost one year after new Rule 600 became effective, and both the Commonwealth and the trial court analyzed the issue under the current version of the rule.

concerning commencement of trial and the requirement of (A), and the 120-day or 180-day time limits on pre-trial incarceration, new paragraph (B). New paragraph (C), concerning computation of time and continuances, and new paragraph (D), concerning remedies, have been modified to clarify the procedures and reflect changes in law.

Pa.R.Crim.P. 600, Comment.

The import of this comment is to reinforce the concept that the changes to Rule 600 do not represent so much an actual change in the rule, rather than a clarification of how the rule is to be interpreted and applied. The Comment further discusses the computation of time:

For purposes of determining the time within which trial mist be commenced pursuant to paragraph (A), paragraph (C)(1) makes it clear that any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time  Thus, the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence.

*Id*.

This comment provides a very straight-forward method of computing time – only those periods of time solely attributable to Commonwealth, non-due-diligent delay, are to be counted toward the 365 days.

Pursuant to Drummond's motion, 556 days elapsed. In the motion, Drummond argued,

Out of the 556 total days that had elapsed since the inception of this case to the trial date of June 23, 2014, a total of 5 days should be attributed to the defense.

Motion to Dismiss, 6/23/2014, Conclusion at 8. The five days referred to in Drummond's motion are from June 7, 2013 to June 12, 2013, when a preliminary hearing needed to be rescheduled due to Drummond not being able to attend. However, we are compelled to agree with the Commonwealth that there are an additional 208 days that cannot be counted against the Commonwealth.

On June 12, 2013, the trial court set a trial date of January 6, 2014. This trial date was specified as the "earliest possible date" consistent with the trial court's calendar. *See* Trial Court Opinion, 4/7/2016 at 11; Docket entry, 6/12/2013.[3] There is no indication in the certified record that the Commonwealth had any control over the setting of this trial date. Pursuant to *Commonwealth v. Jones*, 886 A.2d 689, 702 (Pa. Super. 2005) (time between arraignment and first trial listing is not chargeable to the Commonwealth where trial court determined the trial date was the earliest possible date), this time must also be subtracted from the 556 days cited by Drummond.[4] The five days and 208 days make a total of 213 days that cannot be charged against the Commonwealth for Rule 600 purposes.

---

[3] Specifically, the docket entry states, in relevant part: "Continued for status of discovery on 7/3/13 and for a 3-day trial on 1/6/14 in Courtroom 608. **Earliest possible date** consistent with police, counsel's and the Court's schedules has been given." (Emphasis added.)

[4] We are aware that this issue has been accepted for review by our Supreme Court. *See Commonwealth v. Leon Mills*, 27 EAP 2016.

Accordingly, 556 minus 213 equals 343 days. Therefore, Drummond is not entitled to relief.[5]

Drummond's next claim is that the trial court abused its discretion in imposing a sentence beyond the aggravated range of the sentencing guidelines, relying only upon the perception of Drummond's future behavior. Drummond's claim is a challenge to the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), appeal denied, 589 Pa. 727, 909 A.2d 303 (2006).

---

[5] Drummond entered into a *nolo contendere* plea on October 6, 2014. Pursuant to Rule 600, entry of a *nolo contendere* plea is deemed to be commencement of trial. **See** Pa.R.Crim.P. 600(A)(1). Drummond did not renew his Rule 600 motion prior to the plea. Drummond then withdrew his plea in December 2014. **See** Pa.R.Crim.P. 600(B)(4). This afforded the Commonwealth an extra 120 days to bring Drummond to trial. Drummond was tried by a jury in late January – early February, 2015, well within the 120 day limit.

> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), appeal denied, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra**, at 912-13.

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010).

Here, Drummond has clearly met the first three criteria to challenge his sentence. His appeal is timely, he preserved his claim of an improper sentence by filing a relevant post-sentence motion, and his appellant's brief contains the appropriate Pa.R.A.P. 2119(f) statement. What remains is a determination of whether Drummond has presented our Court with a substantial question appropriate for review.

Drummond has claimed the trial court:

> completely failed to conduct an individualized consideration as to Mr. Drummond's rehabilitative needs as the Sentencing Code requires, especially given his age and dormant criminal record, dormant until a substance abuse problem clearly emerged/reemerged. Instead the lower court focused entirely on retribution and punishment.

Appellant's Brief at 11 (Rule 2119(f) statement). A claim the court failed to achieve individualized justice and imposed an unduly harsh sentence raises a

substantial question. *See Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2013). Therefore, we will address this issue.

We have read the relevant notes of testimony, including from both the trial and sentencing hearing. The record belies Drummond's claim. At sentencing, the trial court was presented with a detailed summation of Drummond's criminal and personal history. The personal history included a recitation of Drummond's many work skills and potential work opportunities. Although Drummond's mother had taken a protection from abuse order against him, he claimed the rift with his mother had been mended. He also claimed to have matured in discovering he had a daughter. The trial court read and reviewed the presentence investigation report and heard argument from both the Commonwealth and defense counsel. Before imposing sentence, the trial judge stated:

> The Court: I have considered the presentence, mental health, prior record score, and the history of your offenses, the facts and circumstances in this case, the sentencing guidelines as well as the arguments of counsel and what you, Mr. Drummond[,] have said.
>
> Twenty-four arrests, 15 convictions, 18 commitments. That's a lot along with 8 revocations. And most interesting, you went to state prison it looks like twice….
>
> [Drummond]: Just once.
>
> The Court: Well, I have in 1991, Judge Clark had given you 2 and-a-half to 5. Then I have Judge Anthony DeFino giving you 3 to 6 years in 1990.
>
> [Drummond]: It was altogether.

The Court: I see. So he made his concurrent to hers?

[Drummond]: I came home in 2006.

The Court: Okay. Well, you managed to earn two state prison sentences, one from Judge Clark, which is not hard to do, and one from Judge DeFino, which is not that easy to earn. And despite 3 to 6 years – and that was for an aggravated assault [with] a weapon, it looks like a gun –

[Commonwealth]: With a firearm.

The Court: - and we have PIC, you come back and you come back in front of me for a large knife or whatever you want to call it, with a burglary, all sorts of DUIs in the meantime.

You have all sorts of skills and abilities but it seems like you've used them through your life to either threaten people, assault people, I don't know, shoot at people. I don't know what happened with this aggravated assault with the gun with Judge DeFino giving you 3 to 6 years and then multiple, multiple DUIs.

Mr. Drummond, I don't know what it will take to stop you from committing other crimes, doing things. You say you were with the wrong people. I would think 3 to 6 years would have been the end of any type of the slightest criminal activity, even things like littering on the street, that 3 to 6 years in state prison for someone like yourself, I would have thought would would've taken care of things but the DUIs and then this case culminated and everything.

Based on what I've seen and what my concerns are about the extensive recidivism that's occurred here and the extensive opportunities on probation and parole and the prior state sentence coupled with the facts and circumstances of this case and what I have read in the mental health presentence report, et cetera, I'm going to sentence you to the following…

N.T. Sentencing, 6/9/2015 at 19-21.

Judge Ehrlich clearly considered a wide range of factors before issuing the sentence. He stated ample reasons for imposing the sentence he did.

- 10 -

We perceive no abuse of discretion therein. Accordingly, Drummond is not entitled to relief on this issue.

Judgment of sentence affirmed.

Judge Jenkins did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2017